SERBINOFF *v.* WOLVERINE MUTUAL MOTOR INSURANCE CO.

1. INSURANCE—ACTS OF SOLICITOR IN SOLICITING INSURANCE BINDING ON INSURER.

Under Comp. Laws Supp. 1922, §§ 9100 [87] and 9100 [311], the acts of an insurance solicitor in soliciting a collision insurance policy on a motor truck are the acts of the company, and his knowledge the knowledge of the company, and the latter is bound thereby, but when the application is signed and sent in, the solicitor's work is

¹Insurance, 32 C. J. §§ 145, 147, 575.

at an end, and he may not thereafter bind the company by any statements made by him.

2. SAME—POLICY BECOMES THE CONTRACT.

An insurance policy when issued and delivered becomes the contract between the parties.

3. SAME—WAIVER BY INSURER MUST BE BY AGENTS ACTING WITHIN AUTHORITY.

Waiver of the terms of an insurance policy, in order to bind the insurer, must be by the insurer through its officers or agents acting within the sphere of their authority.

4. SAME—INSURED HELD TO KNOWLEDGE OF CONDITIONS OF POLICY IN ABSENCE OF FRAUD.

In the absence of fraud, insured is held to a knowledge of the conditions of his policy, even though he may not have read it.

5. SAME—INSURER MAY WAIVE CONDITIONS AS TO TRANSFER.

The provision in an insurance policy for insurer's written consent to the transfer of title to the property insured is for the benefit of the insurer, and may be waived by it.

6. SAME—SOLICITOR MAY NOT WAIVE CONDITIONS AS TO TRANSFER.

An insurance solicitor, to whom an oral request was made to transfer a collision insurance policy on a motor truck, has no authority to waive the conditions of the policy in regard to transfer, and where no notice thereof was given the insurer, the solicitor's promise that the transfer would be made was not binding on it.

7. SAME—NO WAIVER BY VOLUNTARILY REIMBURSING AGENT.

An insurer, by voluntarily reimbursing its agent the amount paid by him for repairs on a truck sold on conditional sales contract, where no claim of legal liability was made therefor, waived no right to contest its liability to the purchaser of the truck for damages to the car with which it collided, where the conditions of the policy in regard to the transfer of the policy were not complied with.

Error to Oakland; Gillespie (Glenn C.), J.    Submitted January 13, 1928.    (Docket No. 20.)    Decided April 3, 1928.

²Insurance, 32 C. J. § 233; ³Id., 32 C. J. § 581; ⁵Motor Vehicles, 42 C. J. § 359; ⁶Insurance, 32 C. J. § 590.

Assumpsit by Wangel Serbinoff and Thomas Serbinoff, copartners as Serbinoff Brothers, against the Wolverine Mutual Motor Insurance Company and others on a policy of insurance. Judgment for plaintiffs. Defendants bring error.. Reversed, and judgment ordered entered for defendants.

*Frank F. Ford,* for appellants.

*Robert D. Heitsch,* for appellees.

SHARPE, J. On July 24, 1922, Charles Sparks, acting as a sales agent for George E. Travis, of Pontiac, sold a Reo motor truck to Steve Matey, of Keego Harbor, under a conditional sales contract. Sparks at that time was also acting as a soliciting agent for Charles A. Bingham, who conducted an insurance agency at Birmingham under the name of the Holden Agency. This agency had a written contract with the defendant company under which it was authorized to secure applications, collect the first premium, and forward the application and premium, less its commission, to the defendant for action thereon. ' At the time of his purchase of the truck, Matey signed an application for insurance in the defendant company against loss or damage due to collision, to the amount of $800, which was presented to him by Sparks. A policy was issued thereon, containing a loss payable clause to Travis. It appears that the plaintiff Wangel Serbinoff was interested in the mercantile business then conducted by Matey. This fact was not stated in the application for insurance, although he signed the note to Travis for the deferred payment on the truck. On August 22, 1922, Matey sold his interest in the business, including the truck, to the plaintiff Thomas Serbinoff. On July 23, 1923, while the plaintiff Thomas Serbinoff was driving the truck at or near Ferndale, hauling a load of produce from Detroit

to plaintiffs' store, it came into collision with a car driven by Oral Sark.    Both vehicles were damaged, Sark's car beyond repair.    The truck was taken to the Travis garage, and a repair bill of $207.01 was incurred.    Sark brought suit against the plaintiffs, and recovered a judgment of $527.55.    The defendant company, although notified, denied liability and declined to defend.    Plaintiffs paid the judgment, and seek recovery therefor in this action.    They had verdict and judgment against the defendant company for $632.91.    Both parties seek review by writ of error.

After some negotiations, Bingham paid Travis his repair bill, and was afterwards reimbursed by defendant.    It is plaintiffs' claim that when Thomas Serbinoff purchased the interest of Matey in the business they both told Sparks about it and requested him "to transfer the policy," and that he said he would take care of it.    There is no proof that the defendant or the Holden Agency had any notice or knowledge of the transfer of this title to the truck until some time after the collision occurred.

The policy contained the following provision:  .

"Subject to the written consent of this company, this policy may be assigned to any purchaser of the motor vehicle insured hereunder, or transferred to another motor vehicle."

The trial court, after calling the attention of the jury to this provision in the policy, instructed them that the only question for them to decide was whether "at or about the time of transfer of title to the car" the defendant company "had knowledge of the fact that Steve Matey, who was originally insured, had transferred his interest to these plaintiffs."    He further instructed them that if "knowledge of this fact was brought to defendant Sparks, then such notice would be notice to the defendant company."  ·

In section 1, chap. 3, pt. 2, of Act No. 256, Pub.

Acts 1917 (Comp. Laws Supp. 1922, § 9100 [87]), an agent of an insurance company is defined "as a person, firm or corporation acting under written authority from any insurance company to solicit insurance and to write and countersign policies of insurance and collect premiums therefor." A solicitor is defined "as any person acting under express authority from an agent, having authority to appoint solicitors, to solicit insurance for such agent, but without the power or authority to issue or countersign policies or *otherwise bind any company of which such agent may be the duly authorized representative*."

Under section 7, chap. 3, pt. 2 (Comp. Laws Supp. 1922, § 9100 [93]), the above provisions are made applicable "only to insurance companies transacting business on a stock plan, and to all mutual or co-operative life and health and accident companies, except fraternal beneficiary societies." These provisions are also made applicable to the "general mutual law," section 1, chap. 3, pt. 5 (Comp. Laws Supp. 1922, § 9100 [311] *et seq.*), under which the policy in question was issued.

It is conceded that Sparks was a soliciting agent for the Holden Agency at the time he secured the application for insurance from Matey. His acts at that time "will be held the acts of the company, and his knowledge the knowledge of the company." *Russell* v. *Insurance Co.*, 80 Mich. 407, 413. The defendant company is chargeable with full knowledge of any facts then known to him which might have influenced it in the issue of the policy or affected the rights of the insured in its enforcement. *Steele* v. *Insurance Co.*, 93 Mich. 81 (18 L. R. A. 85); *Blake* v. *Insurance Co.*, 194 Mich. 589; *Ames* v. *Insurance Co.*, 225 Mich. 44.

"Fair dealing dictates that the agent should see that the information required, and which is necessary to determine whether the policy is valid or not, should

appear on the face of the papers."    *Miotke* v. *Insurance Co.,* 113 Mich. 166, 169.

But when the application is signed and sent to the company the work of the soliciting agent is at an end.    He may not thereafter bind the company by any statements made by him (§ 9100 [87], *supra*).    The policy when issued and delivered becomes the contract between the parties.    The one before us clearly stated that if a transfer of the property insured was made, there must be a consent thereto in writing by the insurer.    No request for such a consent was made, except to Sparks, nor was one granted.    By the instruction given, the jury were informed that this provision might be waived by a request to Sparks for a transfer and his assent thereto.    In *Gambino* v. *Insurance Co.,* 232 Mich. 561, 563, it was said:

"But waiver, in order to bind the company, must be by the company through its officers or agents acting within the sphere of their authority.    If the agents who attempt to speak for the company bear no authority from the company, either express or implied or by holding out, their acts beyond their authority do not bind the company." ·

The authorities are reviewed at some length by Mr. ·Justice FELLOWS in that case.    In the somewhat recent case of *Greentaner* v. *Insurance Co.,* 228 N. Y. 388 (127 N. E. 249, 14 A. L. R. 841), it appeared that the agent of the purchaser of property applied to the agent of the insurance company for a consent to the transfer of title and was told by him that "it was not necessary to have the policy present; that he would have slips prepared consenting to the transfer and assignment, and they could thereafter be delivered to him." No slips were made or delivered, nor was any indorsement made on the policy.    It was held that there was no waiver of the defendant's rights by the agent and no liability in case of loss on the part of the insured.

It may be noted that Act No. 264, Pub. Acts 1921

(Comp. Laws Supp. 1922, § 9100 [254]), providing that policies shall not be declared void for breach of condition "where a loss has not occurred during such breach and by reason of such breach of condition" is not applicable, as it applies to fire insurance policies only.

It is a well-known fact that many persons do not read their insurance policies.    But, as was said in *Cleaver* . v. *Insurance Co.,* 65 Mich. 527, 532 (8 Am. St. Rep. 908) :

"The fact that the plaintiff may not have read the printed conditions of his policy, and relied, in ignorance of them, upon the implied or assumed powers of the agent, cannot help him.    It was his business to know what his contract of insurance was, and there can·be no difference in this respect between an insurance policy and any other contract.    In the absence of any fraud in the making of the same, and none is claimed in this case, the insured must be held to a knowledge of the conditions of his policy, as he would be in the case of any other contract or agreement. When the policy of insurance, as in this case, contains an express limitation upon the power of the agent, such agent has no legal right to contract as agent of the company with the insured, so as to change the conditions of the policy, or to dispense with the performance of any essential requisite contained therein, either by parol or writing; and the holder of the policy is estopped, by accepting the policy, from setting up or relying upon powers in the agent in opposition to limitations and restrictions in the policy."

See *Stout* v. *Insurance Co., ante,* 181.

The request by plaintiffs to Sparks relating to the transfer was but the asking of a personal favor which he had no power or authority to grant.    It in no way . constituted a waiver of defendant's rights to have the express provision in the policy relative thereto complied with.

The provision in the policy for consent to the transfer

of title to the property insured was inserted for the benefit of the insurer, and may be waived by it.

"It is essential, however, that the acts relied on as indicative of a waiver should have been done by the insurer with full knowledge of the facts giving it a right to treat the policy as unenforceable." 14 R. C. L. p. 1155.

The payment by Bingham (Holden Agency) to Travis for the repairs to plaintiffs' truck was made about 14 months after the collision, and about 2 months after Sark had recovered his judgment against the plaintiffs. Defendant had theretofore denied liability and refused to defend that suit, although requested by plaintiffs to do so. Clearly, it waived no right to contest liability in this case by the voluntary reimbursement to its agent of the amount he had paid to Travis when no claim of legal liability was made therefor. The motion for judgment notwithstanding the verdict should have been granted.

The judgment entered is reversed and set aside and the cause remanded for the entry of such a judgment, with costs to defendants.

NORTH, FELLOWS, WIEST, CLARK, and McDONALD, JJ., concurred.

The late Chief Justice FLANNIGAN did not sit.

The late Justice BIRD took no part in this decision.