## HUMPHREY *v.* SWAN

1. NEGLIGENCE—AUTOMOBILES—REAR-END COLLISION—DIRECTED VERDICT.

   In rear-end collision case where plaintiff testified that his car was stationary when struck in the rear by defendant's car, and defendant testified that plaintiff's car had started up when the light turned green and then stopped suddenly for no reason apparent to him, that although he may have taken his eyes off the road, he was not looking elsewhere, and that he must have been less than fully attentive or else the accident would not have occurred, whether or not plaintiff was contributorily negligent or defendant was causally negligent was to be determined by the jury, and refusal to direct a verdict for plaintiff was not error notwithstanding defendant's concession of less than full attention.

2. APPEAL AND ERROR—FINDINGS OF JUDGE OR JURY—REVIEW—SCOPE.
   The Court of Appeals generally exercises a broader review of judge's decisions than of jury verdicts.

3. NEGLIGENCE—AUTOMOBILES—REAR-END COLLISION—INJURIES TO PASSENGER—INSTRUCTIONS—CONSTRUCTION.

   In rear-end collision case where judge charged that passenger was free of contributory negligence as a matter of law, and after "directing" a verdict in his favor because he was a guest passenger, continued to charge concerning the necessity of finding proximate cause, and if so found, the amount of damages sustained, and where under the facts the jury could properly conclude that the passenger's injuries were not caused by defendant's negligence, the passenger was not entitled to a di-

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 8 Am Jur 2d, Automobiles and Highway Traffic § 1011.
[2] 5 Am Jur 2d, Appeal and Error § 839.
[3] 8 Am Jur 2d, Automobiles and Highway Traffic §§ 1011, 1023, 1031.

rected verdict; the charge when read as a whole did not constitute a directed verdict, but even if it were and the jury disregarded it, passenger could not complain if the jury disregarded a direction to which he was not entitled.

Appeal from Wayne, Swainson (John B.), J. Submitted Division 1 April 5, 1967, at Detroit. (Docket No. 1,448.) Decided December 2, 1968.

Complaint by Bernard L. Humphrey and Irving Tasco against Lovel G. Swan and Uni-Services Corporation, a Michigan corporation, for damages resulting from an automobile collision. Verdict and judgment of no cause of action. Plaintiffs appeal. Affirmed.

*Albert Lopatin* (*Norman L. Zemke,* of counsel), for plaintiffs.

*George Belitsos* (*Edward P. Echlin,* of counsel), for defendants.

LEVIN, J. This is a rear-end collision case. Plaintiffs appeal a jury verdict of no cause of action. Plaintiff Irving Tasco, the driver of the automobile in which both plaintiffs were riding, claims he was entitled to a directed verdict. Tasco's passenger, Bernard Humphrey, asserts that the trial judge directed a verdict in his favor, but that the jury failed to follow that instruction. Both plaintiffs claim the judge erred in not granting their motion for a new trial.

Tasco was driving east in the right-hand lane on Larned in downtown Detroit, Michigan. He stopped for a red traffic signal at the intersection of Larned and Griswold. There was at least 1 other automobile ahead of his automobile waiting for the signal to change.

Defendant Lovel Swan was driving the automobile of his employer, defendant Uni-Services Cor-

poration. He pulled up and stopped behind the Tasco automobile.

Defendant Swan testified that the Tasco automobile started up when the light changed and the collision occurred when for no apparent reason Tasco suddenly stopped and he, Swan, was unable to stop his automobile in time to avert a collision. Tasco and Humphrey testified that their automobile did not start up when the light changed and remained stationary at all times.

If the jury chose to believe Swan's testimony in preference to that of Tasco and Humphrey, it could have found that the Tasco automobile did start up when the light turned green and stopped suddenly without any reason for a sudden stop, thereby confronting Swan with a sudden emergency.[1] If the jury so found it would have been justified in concluding both that Tasco was contributorily negligent and that Swan was not causally negligent. See *McKinney* v. *Anderson* (1964), 373 Mich 414, where the Michigan Supreme Court held that since the jury in that case had found the collision occurred in the midst of a sudden emergency not of the defendant's making neither the rear-end collision statute (MCLA § 257.402 [Stat Ann 1960 Rev § 9-.2102]) nor the assured-clear-distance-ahead statute (MCLA § 257.627 [Stat Ann 1960 Rev § 9.2327]) entitled the plaintiff to a directed verdict even

---

[1] Tasco asserted that while traffic ahead of him had started up after the light changed, "the one car in front of me still remained stationary, I couldn't go beyond him."

Swan testified that the Tasco car made a reasonable start and went up to about 5 miles per hour, something like that, and that he, Swan, was traveling between 3 and 5 miles an hour approximately 10 feet behind the Tasco car when Tasco applied his brakes.

Swan testified he did not see anything that justified Tasco in suddenly stopping his car, such as a car in front of Tasco's suddenly stopping or a pedestrian cutting in front of Tasco's car, but on the other hand he could not say that such an event did not occur. If such an event did occur, he did not see it.

though defendant admitted he was going too fast to avoid colliding with the read end of plaintiff's vehicle.

Decision here is not controlled by *Conroy* v. *Harrison* (1962), 368 Mich 310. In that case the defendant admitted he had been looking through his rearview mirror just prior to the moment in time when plaintiff suddenly stopped her car, which the defendant did not discover until he turned back to look ahead and saw the stopping of plaintiff's car, applied his brakes but struck plaintiff's car from the rear.

*Conroy* is distinguishable from the case at bar in that here defendant Swan testified he was looking ahead, conceded only the possibility that he might have taken his eyes off the road, did not admit that he was looking elsewhere, but only that he must have been less than fully attentive or the accident would not have occurred,—his best recollection was that he was watching the Tasco automobile at all times.[2] The defendant Swan's hypothesis is not the kind of concession found in *Conroy* to require a directed verdict in the plaintiff's favor. We also note that in *Conroy* the Supreme Court was reviewing a judge's findings rather than a jury verdict. Appellate courts traditionally exercise a broader review of judges' decisions than of jury verdicts.

"A jury's verdict-view of facts is entitled to an even higher degree of appellate respect than is a judge's verdict-view of the same facts, learned though the judge may be in law. For reasons known well to students of American history, a finding of fact by 'the twelvers' is more apt to be sound than that of one man." *Schneider* v. *Pomerville* (1957), 348 Mich 49, 54.

---

[2] Since Tasco seeks a directed verdict the defendants are entitled to have us take the view of the evidence most favorable to them. *McKinney* v. *Anderson* (1964), 373 Mich 414, 419.

Even if Tasco was entitled to a directed verdict on the liability issues, and he was not, it still would have been necessary to submit the case to the jury for its evaluation of Tasco's alleged damages.[3] The trial judge did not err in refusing to direct a verdict for Tasco.

Plaintiff Humphrey claims that the trial judge directed a verdict in his favor and the jury failed to follow that direction. Therefore, he argues, he was entitled to a new trial. The basis of this contention is the following excerpt from the trial judge's instructions to the jury:

"I now instruct you as a matter of law that the plaintiff Humphrey in this case was free of any negligence which in any way caused or contributed to the accident or to his injuries in this case. In fact, I am directing the verdict in favor of plaintiff Humphrey because he was a guest passenger in this matter."

We are satisfied that all the trial judge said or meant to say by the quoted instruction was that the passenger Humphrey was free of contributory negligence.

The quoted portion of the instruction was taken from a lengthy charge, and to arrive at its proper construction we must read the charge as a whole. *Reynolds* v. *Majewski* (1958), 351 Mich 492, 497; *St. Louis* v. *Fisher & Company, Inc.* (1965), 1 Mich App 55, 58.

Early in the jury instructions the judge stated that he would speak of the 2 separate claims of Humphrey and Tasco in the singular and plural

---

[3] See *Krzeminski* v. *Chuslo* (1966), 4 Mich App 310, 314; *Amsdill* v. *Detroit Motor Bus Co.* (1925), 233 Mich 150, 153; compare *Garrigan* v. *LaSalle Coca-Cola Bottling Company* (1964), 373 Mich 485, 489.

cases, that he would use the two cases interchangeably and that the jury should be guided by the context of his remarks in determining to whom he was referring at a particular time. With that in mind, we note that after "directing a verdict" the judge went on to charge concerning the necessity of the jury's finding "proximate causation". If they found causation the jury was then to go on to the matter of damages.

The judge then pointed out that in Humphrey's case there was a claim for permanent injuries and instructed the jury in the use of mortality and present value tables and generally in regard to the calculation of Humphrey's damages. Humphrey was referred to 3 times separately by name after the "direction of verdict."[4]

Reading the instructions as a whole, the "direction of verdict" coupled with the later statements as to the necessity of finding a causal relationship and the specific references to the separate assessment of Humphrey's damages, we are satisfied that the trial judge did not direct a verdict for Humphrey. The jury was left to resolve the issues of causation and damages. For reasons already stated, the jury could properly conclude that Humphrey's alleged injuries were not caused by the defendant's negligence.

No claim is made that the instructions as given were confusing or erroneous, or that any of plaintiffs' requests to charge were not given.

In all events, the plaintiff Humphrey was not entitled to a directed verdict. The most to which he might have been entitled was an instruction that he

---

[4] At one point the judge charged: *"In the event* that you award damages for plaintiff Humphrey, you are to add up all these items of past and future damages, reduced to present values." (Emphasis supplied.)

was free of contributory negligence. The questions
of causal relationship and damages had to be left
for jury consideration and determination. Humph-
rey cannot complain that the jury refused to follow
an instruction to which he was not entitled. *Collias*
v. *Detroit & Northern Michigan Building & Loan
Association* (1922), 220 Mich 207, 216.

Plaintiffs' reliance on *Fordon* v. *Bender* (1961),
363 Mich 124, and *Mosley* v. *Dati* (1961), 363 Mich
690, is misplaced. In both cases the jury brought
in a verdict for the plaintiff, thereby indicating it
had decided the plaintiff's injuries had been caused
by defendant's negligence. The verdicts were found
by the Supreme Court to have been inadequate.
This is not, however, a case of possible inadequacy
in the verdict. Here there was no verdict at all,
and the jury could properly have reached that deci-
sion, not because it undervalued the amount of dam-
ages found to have been caused by the defendants'
negligence but rather because it concluded that no
damages were caused by negligence of the defend-
ants.

The plaintiffs further assert that the trial judge
should have granted them a new trial on the ground
that the jury's verdict was against the great weight
of the evidence. We conclude from our review of
the evidence that the trial judge did not commit an
abuse of discretion in refusing to grant a new trial
on that ground.[5]

Affirmed. Costs to appellees.

T. G. KAVANAGH, P. J., and VANDER WAL, J., con-
curred.

---

[5] *Murchie* v. *Standard Oil Company* (1959), 355 Mich 550, 558;
*Termaat* v. *Bohn Aluminum & Brass Company* (1961), 362 Mich 598.