FORD v AMERICAN NATIONAL INSURANCE COMPANY

1. APPEAL AND ERROR—QUESTIONS OF FACT—FINDINGS OF JURY.

The question of whether or not decedent was in good health at the time of the application for insurance was a question of fact properly left to, and decided by, the jury; a reviewing court may not reverse the findings of a jury unless reasonable minds could not disagree, a jury's verdict is entitled to an even higher degree of appellate respect than a trial judge's factual findings, and where the trial judge has reviewed the verdict and approved it, appellate review is even more limited.

2. PRINCIPAL AND AGENT—INSURANCE—APPARENT AUTHORITY—ILLITERATE PURCHASER—RELIANCE.

An insurance company, by providing its agent with insurance applications and payment books, and by authorizing him to receive premiums and write new policies, sufficiently shrouded the agent with indicia of authority to justify reliance by an illiterate purchaser of an insurance policy on what the agent said as binding on the insurance company.

3. PRINCIPAL AND AGENT—APPARENT AUTHORITY—INSURANCE—ILLITERATE PURCHASER.

The existence of apparent authority of an agent is partially determined by looking through the eyes of the party dealing with the agent; therefore, an illiterate purchaser of an insurance policy had no notice of any written contractual provision indicating that the agent did not in fact have authority to make an immediately effective insurance policy; such an illiterate party's position differs from that of the ordinary insured party who can be rightfully expected to have full notice of what he signed, and therefore may not avoid express provisions of contracts he signed.

Appeal from Wayne, Harold W. Martin, J. Sub-

REFERENCES FOR POINTS IN HEADNOTES
[1] 5 Am Jur 2d, Appeal and Error §§ 820–847.
[2, 3] 44 Am Jur 2d, Insurance § 1102.

mitted Division 1 February 12, 1973, at Detroit. (Docket No. 12981.) Decided April 24, 1973.

Complaint by Vemba Ford against American National Insurance Company to recover as beneficiary under a life insurance policy. Verdict and judgment for plaintiff. Defendant appeals. Affirmed.

*Saunders & Gualtieri, P. C.,* for plaintiff.

*Kerr, Wattles & Russell* (by *Robert G. Russell* and *William A. Sankbeil),* for defendant.

Before: V. J. BRENNAN, P. J., and HOLBROOK and VAN VALKENBURG,* JJ.

HOLBROOK, J. Plaintiff brought the action below to enforce her rights as the beneficiary under a $10,000 life insurance contract allegedly made between her husband, Edsel Ford, and defendant life insurance company on or about October 22, 1967. Plaintiff's husband died unexpectedly November 24, 1967, after two days of hospitalization. An autopsy revealed the cause of death to be a brain tumor. On December 15, 1967, defendant through its agent tendered back to plaintiff the $5.50 premium paid by plaintiff's husband on the insurance policy in question at the time it was first applied for. Plaintiff refused the $5.50 refund, claiming the insurance company owed her the $10,000 face value of the insurance policy. Defendant insisted that it never accepted the October 22, 1967, application for insurance and therefore the insurance policy was never in effect. The jury found for the plaintiff, and after a denial of a

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

motion for a judgment notwithstanding the verdict or in the alternative a new trial, defendant appeals.

The sticking point in this case is the conditional receipt containing a good health clause signed by plaintiff's husband at the time of the application for insurance. The receipt reads:

"The insurance for which application is made *shall be effective (1) on the date of this receipt or (2) on the date of completion of all medical examinations required by Company rules and practices, whichever date is later, if on such effective date all persons to be insured are in good health and acceptable for insurance under established rules and practices of the Company for the plan, amount, and premium applied for.* In no event shall the total liability of the Company under this receipt exceed $50,000.

"This receipt shall be binding from such effective date until the date on which the policy applied for becomes effective or until the effective date of short-term coverage, if any, whichever is earlier; it is subject to the terms of said policy, must bear the same date and serial number as the application, and be signed by a duly authorized representative of the Company.

"*No medical examiner or representative of the Company except the President, a Vice-President, or the Secretary has the authority to waive the answer to any question in any application for insurance, to modify any application, or to bind the Company by making any promise or representation or by giving or receiving any information unless such information is reduced to writing and made a part of this application.*

"If the Company declines to issue the policy applied for, the above deposit will be refunded upon surrender of this receipt." (Emphasis supplied.)

Defendant claims that plaintiff's husband was not in good health at the time of the application, since he had admittedly been hospitalized from September 13, 1967, to September 23, 1967, for a

bleeding peptic ulcer, had left the hospital against his doctor's recommendations to resume work as a construction laborer, and had seen his doctor once more in September, three times in October and once in November before entering the hospital again. Defendant claims that these facts were unknown to it or its agent George Sagba, who sold plaintiff's husband the insurance policy. Sagba, allegedly believing plaintiff's husband to be in good health, told him the insurance coverage was effective "as of now" when the petition for insurance was signed. When defendant's home office received a subsequent application investigation report dated October 26, 1967, it showed that plaintiff's husband had ulcers. Company policy then dictated that an attending physician's report verify the investigation report, but this attending physician's report was not received until December 18, 1967. In the meantime plaintiff's husband had died, and a notice of non-acceptance of the insurance application had been sent to plaintiff on December 7, 1967.

Plaintiff claims on the other hand that Sagba knew that her husband had been in the hospital for ulcers, that both she and her husband were careful to point out that fact to Sagba, and that Sagba had told them that her husband's ulcer condition would not prevent him from getting life insurance, since ulcer conditions were so common that the insurance company ignored them in approving insurance applications. Plaintiff alleges that Sagba repeatedly assured them no medical examination would be required, since her husband fit into an age and insurance amount category that was exempt from the normal physical examination requirement. Furthermore, plaintiff claims that since her husband was illiterate he did not read

the application, but rather allowed Sagba to fill in the answers to the questions on the form after they were put to plaintiff's husband and answered by him.

The autopsy of plaintiff's husband revealed no evidence of an ulcer, a fact over which there is no apparent disagreement.

What Sagba's representations amounted to, in plaintiff's opinion, was a binding waiver of the good health clause by an agent of the defendant insurance company. The insurance company objects that Sagba never knew of plaintiff's husband's ill health. Therefore Sagba never waived anything, and even if he did, he was without authority to bind the insurance company by such a waiver. Our own conclusion is that the question of whether or not plaintiff's husband was in good health at the time of the application for insurance was a question of fact properly left to, and decided by, the jury. We note that a reviewing court may not reverse the findings of a jury unless reasonable minds could not disagree. *Schweim v Johnson,* 10 Mich App 81 (1968). A jury's verdict is entitled to an even higher degree of appellate respect than a trial judge's factual findings. *Humphrey v Swan,* 14 Mich App 683 (1968). Where, as here, the trial judge has reviewed the verdict and approved it, appellate review is even more limited. *Termaat v Bohn Aluminum & Brass Co,* 362 Mich 598 (1961).

In our own analysis we presume the legality and ordinary effectiveness of "good health" provisions in life insurance contracts. 60 ALR2d 1429, 1442, § 10. Defendant wishes to lead us from this presumption to the conclusion that plaintiff's application was void, since plaintiff allegedly admitted that her husband was not in good health at the time of the insurance application. Our review of

the record discloses no such direct admission. Indeed, at the prejudgment meeting on defendant's motion for a judgment notwithstanding the verdict, plaintiff's counsel explicitly denied defense counsel's assertion that such an admission had been made. Moreover, even assuming that such a nonpleading admission had been made by plaintiff, that admission would be no more than evidence to be weighed by the jury in deciding whether the decedent was ill at the time of the application. *Cf.* the result of admissions made *in pleadings* in *Ogilvie v Inter-Ocean Ins Co,* 12 Mich App 652 (1968). After all, by virtue of defendant's own contractual provision contained in the conditional receipt *a provision it strenuously asserts strictly controls the disposition of this case,* it is not the insured's admissions concerning good health that control the acceptability of the application. Rather, the company reserves the right to reject an application when the prospective insured is not "in good health". An insured could mistakenly claim affliction by all sorts of diseases and yet still complete a successful application if the company found him in fact in good health. This insurance policy was admittedly of a category for which the company did not require a physical examination in order for it to be effective. Therefore, the insured decedent need only *be* in good health, not *claim* to be, by the terms of the binding conditional receipt. Again what all this narrows down to is a question of fact, *i.e.,* whether a jury could reasonably conclude that plaintiff's husband did not suffer from bad health on or about October 22, 1967. We cannot say that the jury's decision for plaintiff here was in error, even granting the existence of plaintiff's alleged admissions of her husband's ill health. No evidence of ulcers was found in the autopsy. The pathologist testified that the cause of

death was a brain tumor, and stated that an ulcer might easily heal and show no trace of its previous existence. Moreover, plaintiff's husband left the hospital in September against his doctor's orders and returned to work as a construction laborer only a few days later, a fact that could easily be taken as evidence of good, if not robust, health. Since the jury found the decedent to be in good health at the time of the application, and since we see no reason to disagree, we find that the policy was immediately and irrevocably effective at the time of the application.

Had we been unwilling to affirm the jury's verdict on the basis that there was insufficient evidence of good health, we would then need decide whether there had in fact been a waiver of the good health provision by the alleged representations made by defendant's agent to Mr. and Mrs. Ford. Defendant asserts that plaintiff and her husband are held to the knowledge of the contents of the conditional receipt whether or not the receipt was actually read, citing for authority *Universal Underwriters v VanKirk,* 26 Mich App 254 (1970); *House v Billman,* 340 Mich 621 (1954); *Serbinoff v Wolverine Mutual Motor Ins Co,* 242 Mich 394 (1928); *Scanlon v Western Fire Ins Co,* 4 Mich App 234 (1966). It is true also, of course, that fraud might mitigate the results of this rule, although fraud is not alleged here. *Serbinoff; Scanlon, supra.* Plaintiff, however, does claim that defendant's agent waived the requirements of the conditional receipt, even if she and her husband are held to the knowledge of its content. Whether or not Sagba made representations that the conditional receipt was not fully binding was a question of fact. Mrs. Ford testified she repeatedly told Sagba of her husband's past illness, that he re-

mained adamant in claiming that the illness did not matter, that her husband told Sagba of his illness, and that Sagba filled out the application because her husband was illiterate. The question of waiver might easily have been found for plaintiff by the jury on the basis of this evidence and other evidence in the record.

Defendant asserts, however, that even assuming that Sagba made efforts to waive the express contractual provisions contained in the conditional receipt, he had no authority, apparent or otherwise, to do so. Defendant cites a number of Michigan cases as authority for the proposition that an insurance company is not bound by a local agent's statements contrary to the express provisions of an insurance policy, since the express provisions negate any allegation of apparent authority in the agent to make such representations. *Serbinoff, supra; Mitchell v Western Fire Ins Co,* 272 Mich 204 (1935); *Hall v Encyclopaedia Britannica, Inc,* 325 Mich 35 (1949). Defendant cites 2 Restatement Agency, 2d, Comment, § 27(a), p 104, for the rule that in order for apparent authority to exist the principal must intend to cause the third person to believe that the agent is authorized to act for him. *Westchester Fire Ins Co v Hanley,* 284 F2d 409 (CA 6, 1960). Defendant claims it in no way led the insured to believe that Sagba had authority to waive any conditions contained in the conditional receipt, and therefore there was no apparent authority. To the contrary, we quote from the same comment in the Restatement:

"The information received by the third person may come directly from the principal by letter or word of mouth, from authorized statements of the agent, from documents, *or other indicia of authority given by the principal to the agent,* or from third persons who have

heard of the agent's authority through authorized or permitted channels of communication." (Emphasis supplied.)

To us it seems that providing Sagba with insurance applications, payment books, and authorizing him to receive premiums and write new policies sufficiently shrouded Sagba with "indicia of authority" to justify reliance by an *illiterate* Mr. Ford on what Sagba said was binding on the insurance company. Such a finding is consistent with the idea that the existence of apparent authority is partially determined by looking through the eyes of the party dealing with the agent. Since Mr. Ford was illiterate he had no notice of any written contractual provision indicating that Sagba did not in fact have authority to make an immediately effective insurance policy. This simply is *not* the case of the ordinary insured party who can be rightfully expected to have full notice of what he signed, and therefore may not avoid express provisions of contracts he signed. See, *e.g., Universal Underwriters v VanKirk, supra.*

Affirmed. Costs to plaintiff.

All concurred.