THORP v DAYTON TIRE & RUBBER CO.

1. WITNESSES—EXPERT WITNESSES—DISCRETION.

A trial judge must decide, within the limits of fair discretion, whether the experience of the supposed expert witness has been such as to make his opinions of any value.

2. EVIDENCE—EXPERT WITNESSES—EXPERIMENTS—EXPERT OPINIONS.

Testimony of an expert witness about test results which did not reproduce the conditions surrounding the accident in question were properly admitted into evidence where such results were offered to enlighten the jurors and allow them to more intelligently consider the issues presented by the experiment, and where the issue was complicated and the opinions of experts would be of inestimable assistance to the jury in deciding the ultimate issue.

3. WITNESSES—EXPERT WITNESSES—EXPERT OPINIONS—COURT RULES.

Questions calling for the opinion of an expert witness need not be hypothetical in form unless the judge, in his discretion, so requires; the witness may state his opinion and the reasons therefor without first specifying data on which it was based, but upon cross-examination he may be required to specify such data; the judge in his discretion may require that a witness, before testifying in terms of opinion or inference, be examined first concerning the data upon which the opinion or inference is founded; the testimony of an expert witness in the form of opinions or inferences otherwise admissible is not objectionable because it embraces the ultimate issue or issues to be deduced by the trier of fact (GCR 1963, 605).

REFERENCES FOR POINTS IN HEADNOTES

[1] 31 Am Jur 2d, Expert and Opinion Evidence § 31.
[2] 31 Am Jur 2d, Expert and Opinion Evidence §§ 42, 46.
[3] 31 Am Jur 2d, Expert and Opinion Evidence § 36 *et seq.*
[4] 53 Am Jur, Trial § 500.
[5] 53 Am Jur, Trial § 53.
[6] 53 Am Jur, Trial § 554.
[7] 63 Am Jur 2d, Products Liability § 57.

4. TRIAL—JURY—IMPROPER ARGUMENT—APPEALS TO PREJUDICE.

An appeal by counsel to the exercise by the jury of logic in weighing the testimony is proper; however, an appeal by counsel to a jury's prejudices and emotions is improper.

5. TRIAL—INSTRUCTIONS TO JURY—ONE-SIDED CHARGES—ARGUMENTATIVE CHARGES.

Trial judges must guard against one-sided or argumentative requests to charge and must avoid requested instructions which assume or take as established those facts which the parties, by their proofs, have placed in controversy.

6. TRIAL—INSTRUCTIONS TO JURY.

In determining whether instructions to the jury are erroneous, the instructions must be read as a whole.

7. PRODUCTS LIABILITY—INSTRUCTIONS TO JURY—DEFECTIVE MANUFACTURE—DUTY TO WARN.

No instruction as to the duty to warn was required in a case for negligence and breach of warranty in the manufacture of a tire where the plaintiffs maintained only that a tire was dangerous because of defective manufacture, since if the accident occurred due to defective manufacture, the manufacturer would be liable whether warnings were given or not.

Appeal from Wayne, Richard Hammer, J. Submitted Division 1 November 9, 1973, at Detroit. (Docket No. 14342.) Decided March 1, 1974.

Complaint by Carl Thorp and Dale Thorp against Dayton Tire & Rubber Co., Tire Discount Company, and James M. Nute, doing business as Westside Tire Distributor, for injuries resulting from negligence and breach of warranties. Judgment for defendants. Plaintiffs appeal. Affirmed.

*Weinstein, Kroll & Gordon, P. C.,* for plaintiffs.

*Butzel, Long, Gust, Klein & Van Zile* (by *James D. Ritchie* and *Chester E. Kasiborski, Jr.),* for defendant Dayton Tire & Rubber Company.

Before: LESINSKI, C. J., and FITZGERALD and CAR-
LAND,* JJ.

CARLAND, J. The plaintiff Dale Thorp was in-
jured on December 5, 1967 at his place of employ-
ment while replacing a repaired tire on a wheel
rim at which time the tire exploded, almost sever-
ing his right hand. The tire in question was manu-
factured by the defendant Dayton Tire and Rubber
Co., a subsidiary of the defendant The Firestone
Tire & Rubber Company. The tire was one of two
tubeless snow tires purchased on November 14,
1966 by one Arthur Kohlruss from defendant Tire
Discount Co. who in turn had purchased it from
James M. Nute d/b/a Westside Tire Distributor.

From the date of purchase until May of 1967,
the tire was used and driven several thousand
miles when the wheels including the tires were
removed and stored for the summer. Shortly be-
fore the accident the tires were remounted on the
car and driven for an additional period until it
went flat. It was then taken to plaintiff's employer
to be fixed. It appears that it was first patched
from the inside and then or later a plug was
inserted through the patch. This was described by
plaintiff's expert as "a crude repair". Within a day
or two it again went flat and it was then returned
to the service station for further repairs.

On the date in question, Dale Thorp, a 17-year-
old boy who had been employed at the station for
about a year and a half, came to work and was
instructed to repair the tire by inserting an inner
tube. Plaintiff mounted the tire on a changing
machine and removed the same from the rim,
inspected the tire and rim and remounted one side

---

* Former circuit judge, sitting on the Court of Appeals by assign-
ment pursuant to Const 1963, art 6, § 23 as amended in 1968.

of the tire over the rim edge. Plaintiff next inserted the inner tube after partially inflating the same, mounted the other side of the tire on the rim and began to inflate the tire and then heard the beads on each side pop into place. After first putting some air in the tire, the plaintiff checked to see if the tube was pinched between the bead and the rim and he continued to further inflate. As plaintiff put his right hand over the tire to check its pressure which he estimated to have been at 30 lbs., the tire bead wire broke, blew over the rim and the plaintiff was injured. The tire and tube in question were never used again but were stored by the owner and were thus available for inspection and evaluation by the experts.

The expert, one Dr. Kurt, called by the plaintiffs explained the purpose of the bead wires imbedded in the "bead is to hold the tire tightly to the rim, thus preventing air leakage and tire from slipping over the edge of the rim". In the case at bar, the tire had 16 wires in the bead. The expert testified to having inspected some 60 instances of bead wire failure and had witnessed hundreds of tests to determine the cause of such occurrences. It was his opinion that the wire bundle had a loose configuration due to faulty manufacture and that the end wires of the bundle were not properly tied down and that a substandard tire, unable to stand certain stresses, resulted. Dr. Kurt further stated that in his opinion the loose configuration and the failure to properly tie the end wires resulted in a condition whereby the bead wire was unable to withstand the tensile stresses during manufacture and mounting, thus causing the bead fracture and the resulting explosion. He rejected defendants' theory that the accident happened because of a pinching of the inner tube.

The defendants' expert testified that his examination of the tire, the inner tube and the rim did not disclose the bead wire to have been in an abnormal condition and that there was no defect in manufacturing. Therefore, he concluded that the accident was caused by the pinching of the inner tube between the tire bead and the rim during mounting and subsequent inflation of the tire; that the continued inflation caused the tire bead to creep over the rim, thus placing unusual pressure on the bead and that this stress operated to fracture each of the four layers of the bead wires successively; that at the moment the plaintiff reached over the tire edge the bead popped over the edge of the rim, the inner tube ruptured at the point of such creeping and the tire blew into the air injuring the plaintiff.

Thus the ultimate factual question to be determined by the jury was a determination of the cause of the fracture of the tire bead: was the cause the improper design, manufacture, or inspection of the tire, or was the cause the improper mounting of the tire by the plaintiff. The jury resolved the question against the plaintiff and returned a verdict of no cause for action. From this verdict plaintiff appeals claiming numerous prejudicial errors.

During the trial the defendants' expert testified as to the examination of the tire in question, the tube, and the rim upon which the tire was mounted and further as to certain tests performed thereon. He was also permitted to testify over objection as to the tests made upon and the results thereof as to six tires selected at random by him but not for the purpose of the litigation here involved. None of the tires so tested were manufactured by or sold by the defendants in the in-

stant case. The results of these tests were demonstrated by him through the use of certain X-rays (which were received in evidence over objection) which defendants' counsel said were being offered "to show what the normal condition of bead bundles are in the industry and also the force that it takes to break bead bundles in this condition". As a result of all tests, the expert concluded that neither the tire, the tube, nor the wheel were manufactured defectively and the accident occurred because of the pinching of the inner tube between the tire and the rim.

It is plaintiffs' contention that the admission of the foregoing into evidence constituted reversible error; that in order for such evidence to be admissible the test must be made under the same or similar circumstances as the facts in the case at bar. The cases cited by the plaintiff are authority for the proposition stated only where the test is designed to reproduce the conditions surrounding an event.

In the case at bar no attempt was made to reproduce the conditions existing at the happening of the event. Since only the manufacture and configuration of the bead bundle were in question, the test results were offered to show that the force needed to break the bead wires was so great that they would break only when subjected to extremely high pressure when inflated, or inflated when the bead was in an improper position due to improper mounting of the tire, or when the tube was pinched between the tire and the rim.

The bead bundles on the tires tested were similar to the bundle on the tire involved except perhaps as to the number of wires but no claim is made here that there should have been more wires. The wire was of the same caliber and

strength as the tire which exploded. It is true that the test beads were broken by mechanical force and not by air pressure but it would seem that force is force and when applied in whatever manner the result should be the same.

This Court, in *Friedman v Farmington Township School District,* 40 Mich App 197; 198 NW2d 785 (1972), had occasion to pass upon the use of expert testimony. The thrust of defendants' argument here is the same as that pronounced in *McEwen v Bigelow,* 40 Mich 215, 217 (1879), by Justice COOLEY:

"He [trial judge] must decide within the limits of a fair discretion whether the experience of the supposed expert had been such as to make his opinions of any value."

The thrust of this position is to allow an expert to enlighten the jurors and allow them to more intelligently consider the issues presented by his experiments. *Smith v Grange Mutual Fire Insurance Co of Michigan,* 234 Mich 119, 126–127; 208 NW 145, 148 (1926):

" 'It is not necessary, however, that the conditions should be exactly identical, but a reasonable or substantial similarity is sufficient, and the lack of exact identity affects only the weight and not the competency of the evidence, provided always that there is such a degree of similarity that evidence of the experiments made will accomplish the desideratum of assisting the jury to an intelligent consideration of the issues of fact presented.' 22 C.J. p. 759.

" 'A frequent use of experiments is for the purpose of ascertaining whether a witness, by reason of darkness, atmospheric conditions, or intervening objects, could have seen from a certain spot an act or occurrence.' 4 Chamberlayne, Evidence § 3170.

" 'This similarity need not be precise in every detail.

It need include only those circumstances or conditions which might conceivably have some influence in affecting the result in question.' 1 Wigmore on Evidence, § 442.

" 'The facts need not be exactly or in every particular similar; if they are sufficiently similar to accomplish the purpose of assisting the jury to intelligently consider the issue of fact presented in regard to the special point in controversy, the evidence is admissible.' *Atlanta, etc, R Co v Hudson,* 2 Ga App 352, 354 (58 SE 500) [1907]."

It would seem that in an issue as complicated as the explosion of a claimed defective tire that the opinions of experts would be of inestimable assistance to the jury in deciding the ultimate issue.

In *Royal Mink Ranch v Ralston-Purina Co,* 18 Mich App 695; 172 NW2d 43 (1969), the plaintiff by his expert proffered testimony on the ultimate issue but the foundation data was derived from experiments on chickens rather than on mink. The ultimate issue concerned the necessity of vitamin A in mink food, a deficiency of which was claimed by the plaintiff to have caused the mink loss. This Court ruled that GCR 1963, 605 would allow such opinion.

"Questions calling for the opinion of an expert witness need not be hypothetical in form unless the judge, in his discretion, so requires. The witness may state his opinions and the reasons therefor without first specifying data on which it was based, but upon cross-examination, he may be required to specify such data. The judge, in his discretion, may require that a witness, before testifying in terms of opinion or inference, be examined first concerning the data upon which the opinion or inference is founded. Testimony of an expert witness in the form of opinions or inferences otherwise admissible is not objectionable because it embraces the ultimate issue or issues to be decided by the trier of the fact."

Here, as in *Royal Mink,* though the tests were not exactly duplicated, the test results related to one of the ultimate issues in the case; was the cause of the tire bead fracture defective manufacturing as claimed by the plaintiff or improper mounting as claimed by the defendant. We find no error in the admission of the questioned testimony.

An examination of the claim of improper argument of defense counsel on the grounds that the same constituted an improper appeal to the jury's personal prejudice and emotions discloses the same to be without merit. Had such an appeal been made, it would have been error, *Clark v Grand Trunk W R Co,* 367 Mich 396; 116 NW2d 914 (1962). It was, however, an appeal to the exercise of logic in weighing the testimony of plaintiff's expert.

It is the further claim of the plaintiff that the trial court committed error in charging the jury regarding the theories of the respective parties. The substance of such claim is that rather than making it plain, that only the claim or theories of defendants were being stated that the court was advising the jury as to what the evidence disclosed; that in so doing, the judge usurped and took over the duties of the trier of the facts.

The rule concerning fair instructions was quoted in *Washburn v Lucas,* 373 Mich 610, 620; 130 NW2d 406, 411 (1964) (DETHMERS, J., *dissenting):*

"Trial judges must guard against one-sided or argumentative requests to charge and must avoid requested instructions which assume or take as established those facts which the parties, by their proofs, have placed in controversy."

In determining whether instructions to the jury are erroneous, the instructions so given must be

read as a whole. *Humphrey v Swan,* 14 Mich App 683; 166 NW2d 17 (1968); *Heckel v American Coupling Corp,* 16 Mich App 712; 168 NW2d 904 (1969), *aff'd,* 384 Mich 19; 179 NW2d 381 (1970).

Reading these instructions as a whole we find that as to this aspect, the judge prefaced them as follows:

"Now ladies and gentlemen, we get to the theories of the plaintiffs and the defendants".

Later he said:

"Now it is the defendants' theory" and
"The defendants claim further" and
"The defendants claim".

After such opening words the judge did on only two occasions use the word "the evidence indicated" and "the evidence shows". Taken out of context, it might appear that positive instructions were being given as to the evidence. However, when the instructions are read in their entirety it is clear that they were being given as part of the defendants' claim. We are not persuaded the jury was misled thereby.

Plaintiffs further claim that the court erred in refusing to instruct as to the defendants' duty to warn. It should be noted at this point that the record is barren as to whether or not the plaintiffs were warned. It would seem that if it is conceded that a legal duty to warn existed, there is then placed upon the plaintiffs the burden to establish by competent evidence a breach of that duty by the defendants.

Plaintiffs rely upon *Schedlbauer v Chris-Craft Corp,* 381 Mich 217; 160 NW2d 889 (1968), as

authority for the position taken by them. In this case it was conceded that:

"[I]f the diaphragm should become pitted and porous through wear, or should actually fracture in small part from repeated flexion in the course of a long continued functioning of the pump, gasoline would be forced out of the pump, into the confined space occupied by the engine, through two holes in the pump which AC provided for venting the pump."

This situation, the Court concluded, created an inherently dangerous condition if the pump was not checked regularly to determine the condition of the diaphragm. Upon this conclusion, the Court held that a question for the jury arose as to whether some form of fair warning should have been given of the possibility that a dangerous condition might arise if inspection was neglected.

In the instant case, the plaintiffs do not complain that the tire became dangerous by reason of use, age or wear, but maintain only that it was dangerous because of defective manufacture.

In determining the question here involved, sight should not be lost of the ultimate issue. Did the accident occur because of defective manufacture or because of improper mounting of the tire? Plaintiffs' position is not that all bead bundles are inherently dangerous even though properly used, but they are dangerous if defectively manufactured.

If because of defective manufacture the accident occurred, the manufacturer would be liable whether warnings were given or not.

If because of improper mounting the accident occurred, to whom and in what form should the warnings be given? Should they be impressed upon the tire itself, or should they be posted in every

gas station which might be called upon to repair the tire?

Since it is defendants' contention that the accident occurred because of improper mounting, then it may be assumed that any warning required should relate to dangers attendant thereto. The record indicates the dangers if the bead is improperly seated or if the tube is pinched. Thus any required warning should point out the danger if the former does not occur or if the latter happens. In the case at bar, Carl Thorp had worked at the gas station for about one and one-half years; had mounted at least 100 tires, some of which were equipped with inner tubes; he had apparently been warned by someone of the dangers because his testimony shows that he heard the beads seat themselves and that he determined that the tube was not pinched before he continued further inflation. He could not nor would not have done more had specific warnings been given by the defendants. Under these circumstances, we conclude that no instruction as to the duty to warn was required.

When the instructions in regard to negligence with respect to defendants' conduct and as to possible verdicts are read as a whole, we cannot conclude the jury was confused thereby and therefore there was no reversible error.

We affirm.

All concurred.