HARRY v CRABILL

1. AUTOMOBILES—NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—INSTRUC-
TIONS TO JURY—REQUESTED CHARGES.

A judge's charge on contributory negligence in a trial for dam-
ages sustained in an automobile accident was proper as given
and failure to give a charge in the precise form requested by
the defendants was also proper where the instructions to the
jury set forth in substance what defendants were requesting
the court to charge and brought to the attention of the jury
that plaintiff had a college degree, a master's degree, that he
was a teacher, and especially that he taught driver's training
for a number of years.

2. NEGLIGENCE—STATUTES—PEDESTRIANS—NEGLIGENCE PER SE.

A plaintiff was not a pedestrian within the meaning of a statute
which provides that certain activities by pedestrians in viola-
tion of that statute constitute negligence per se where the
plaintiff was attempting to start a stalled vehicle on a right-of-
way (MCLA 257.655).

3. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—INSTRUCTIONS TO JURY
—ASSUMPTION OF RISK.

A trial court properly refused the defendants' requested charge
that one who "voluntarily and unnecessarily assumes the dan-
ger would be guilty of contributory negligence" where the
charge given by the trial court on the subject of contributory
negligence was sufficient without the requested supplemental
language; assumption of risk should not be used as a substitute
for, or as a supplement to, or as a corollary of, contributory
negligence.

---

REFERENCES FOR POINTS IN HEADNOTES
[1, 3] 8 Am Jur 2d, Automobiles and Highway Traffic § 1023.
    57 Am Jur 2d, Negligence § 298 *et seq.*
[2] 7 Am Jur 2d, Automobiles and Highway Traffic § 174.
    57 Am Jur 2d, Negligence § 234.
[4, 5] 7 Am Jur 2d, Automobiles and Highway Traffic §§ 235, 383, 820.
    57 Am Jur 2d, Negligence § 295 *et seq.*

4. AUTOMOBILES—NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—JURY QUESTION.

The Court of Appeals cannot say as a matter of law that a plaintiff, in the act of alleviating a potentially dangerous situation at some risk to himself, was acting unreasonably while assisting in the removal of a stalled travel trailer and motor vehicle which was obstructing traffic on a public street where the plaintiff was in a well-lighted setting, with plenty of room for traffic to pass on either side of the stalled vehicles, with the back of the trailer marked with lights and fluorescent tape, and where all other drivers saw the vehicles in time to stop.

5. AUTOMOBILES—NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—POLICE OFFICERS—STATUTES—JURY QUESTION.

An argument that since the jury found that a plaintiff was not guilty of contributory negligence and that he was acting reasonably under the circumstances when he parked his car in the middle of a street and was attempting to start a motor vehicle which was pulling a trailer and which was disabled in the middle of the street these same circumstances should be sufficient to find that police officers likewise acted reasonably in leaving the scene and failing to direct traffic after appraising the situation is not sustainable where a jury might find that the circumstances warranted the risk involved in removing the danger on the street and at the same time find that it was the duty of the officers under a statute to reduce the risk by whatever means at hand, and failure to do so would amount to negligence (MCLA 242.1).

Appeal from Muskegon, James F. Schoener, J. Submitted Division 2, 1974, at Grand Rapids. (Docket No. 17252.) Decided November 6, 1974.

Complaint by Billie Harry and Leona Harry against Ermal L. Crabill, Donald G. Mead, Michael A. Russell, and the City of Muskegon for damages for injuries sustained in an automobile accident. Judgment for plaintiffs. Defendants Mead, Russell, and City of Muskegon appeal. Affirmed.

*Elmer R. Kuck (Parmenter, Forsythe & Rude,* of counsel), for plaintiffs.

*Landman, Hathaway, Latimer, Clink & Robb* (by *Charles H. Rawlings*), for defendants.

Before: ALLEN, P. J., and T. M. BURNS and R. L. SMITH* JJ.

SMITH, J. This case visits us for the second time. In *Harry v Muskegon,* 41 Mich App 642; 200 NW2d 460 (1972), this Court held that there was a question of fact as to whether the police officers' failure to assist plaintiff in removing a stalled travel trailer and motor vehicle, which was obstructing traffic on a public street, constituted a breach of defendants' duty to keep the streets in a reasonably safe and fit condition for travel as required by MCLA 242.1; MSA 9.591. A jury trial resulted in a verdict in favor of both plaintiffs in the sum of $175,000 against all the defendants. A motion at the conclusion of plaintiffs' case for a directed verdict and motions for judgment notwithstanding the verdict were denied. This is an appeal from the denial of these motions.

On Sunday, February 28, 1965, at approximately 2 a.m. Mr. Jonas and wife were proceeding easterly on Muskegon Avenue just west of Jefferson Street in the City of Muskegon in a car which was towing a travel trailer. The Jonas vehicle stalled and stopped in the middle lane of Muskegon Avenue about one car length west of Jefferson Street. Muskegon Avenue has four lanes, the northerly lane was limited to parking and the three southerly lanes for traffic. Muskegon Avenue is a one way street for traffic going easterly. The intersection of Muskegon Avenue and Jefferson Street is controlled by traffic lights which were in operation at the time of the ensuing events.

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

Jonas left his vehicle to call his friend Billie Harry who agreed to assist in removing the stalled vehicles. Plaintiff Billie Harry arrived shortly with his wife and proceeded to inspect the stalled car. At approximately 2:40 a.m., while plaintiff was standing between the front bumpers of the Jonas car and his own car, he having parked his car in front of the Jonas car with an intervening distance of 12 or 18 inches, and while he was attempting to attach jumper cables between the batteries of the two cars, a car driven by defendant Crabill struck the trailer from the rear, pushing it forward, thereby pinning plaintiff between the two bumpers. As a result plaintiff Billie Harry lost his right leg just above the knee.

From the record the jury could find that Muskegon Avenue was well lighted from overhead lights, that the front lights of plaintiff's car shown against the front of the Jonas car, that plaintiff had no problems with lighting as he proceeded to work on the Jonas car, that about 20 cars were able to pass the stalled vehicles without incident, that the rear of the trailer was marked with a red fluorescent 1 to 1-1/2 inch tape along the bottom and with two red lights and three yellow lights, and that plaintiff had been on the scene between the two cars from 20 to 30 minutes before he was injured.

Before plaintiff arrived on the scene defendant police officers Mead and Russell, during the course of their duties for the City of Muskegon, came upon the stalled vehicles. The officers asked if help was needed. When Mr. Jonas responded that help was on the way the officers left the scene and testified they did not thereafter return. There was testimony however that after plaintiff arrived and while he was working on the Jonas car two other

Muskegon officers stopped to inquire if any help was needed and plaintiff replied that he thought he had the problem solved whereupon these officers drove away.

Defendant Crabill testified that he saw the trailer standing in the center lane when he was 200 or more feet west of it but that the traffic light was red and since he was only traveling about 25 miles an hour he did not slow up believing the trailer would move when the light changed to green. When Crabill realized the trailer was not going to move as he believed it would it was too late to avoid the rear-end collision. Crabill does not appeal the verdict.

It is the claim of plaintiffs that officers Mead and Russell and the City of Muskegon are liable because the officers were negligent in carrying out their duties as police officers by failing to remain at the scene and render aid and assistance and warn other motorists of the situation.

MCLA 242.1; MSA 9.591 provides:

"Any person or persons sustaining bodily injury upon any of the public highways or streets in this state, by reason of neglect to keep such public highways or streets * * * in reasonable repair, and in condition reasonably safe and fit for travel by the * * * city * * * shall be liable to and shall pay to the person or persons so injured or disabled, and to any person suffering damages by reason of such injury, just damages, to be recovered in an action of trespass on the case before any court of competent jurisdiction."

The verdict of the jury reflects a finding that officers Mead and Russell and the City of Muskegon were negligent by reason of the officers' failure to take the necessary steps to keep the street in a reasonably safe condition and fit for travel and that plaintiff Billie Harry was not

guilty of contributory negligence. From the denial of the motions for a directed verdict and judgment n.o.v. defendants Mead, Russell and the City of Muskegon appeal.

Five allegations of error merit discussion.

Did the court commit reversible error by refusing to instruct the jury that they could consider age, intelligence, and experience of the plaintiff in determining contributory negligence?

The trial court charged the jury on contributory negligence in the language of SJI 11.01 and on proximate cause in the language of SJI 15.01. The trial court charged the jury on defendant's claims as follows:

"Billie Harry had three companions available to watch for him and warn him of any approaching danger but did not ask any of them to do so.

"He claims that he told two police officers that he did not need any help and that he was just about done and he thought that he had it under control. Mr. Harry is a college graduate and also has attained a Master's Degree in Special Education. He has taught school and also taught Driver's Training, including safe driving practices for many years.

"The defendants also claim that the plaintiffs were in a position to use their best judgment in deciding whether Billie Harry should attempt to use the jumper cables while the stalled car and trailer were out in the street. Billie Harry was intelligent and a highly educated man and had taught Driver's Training and was capable of exercising reasonable care for his own safety. The defendants claim that Mr. Harry knew or should have known what a reasonably careful person would do under the circumstances; that a reasonably careful person would not have stood in between the fronts of the two cars, in the middle of the street for twenty or more minutes and Billie Harry was negligent and his negligence would bar any recovery of damages in this case, even if the Police Officers were also negligent as claimed by the Plaintiffs.

"The defendants also claim that Billie Harry voluntarily placed himself in a position that could become dangerous and voluntarily remained there and could have removed himself from such a position at any time. There was no emergency present and the plaintiff cannot cast responsibility on others for the consequences of his own purely voluntary act.

"The defendants have the burden of proving that Mr. Harry was contributorily negligent in one or more ways claimed by the defendants as stated to you in these instructions and that such negligence was a proximate and contributing cause of the injuries and damages to the plaintiff."

These instructions set forth in substance what defendants were requesting the court to charge. They bring to the attention of the jury that Billie Harry had a college degree, a master's degree, that he was a teacher, and especially that he taught driver's training for a number of years. We can only conclude that the jury gave these facts the same consideration that they gave other portions of the court's charge. Defendants' objections to the charge as given and to the failure to give requests in the precise form submitted are without merit. *Ferries v Copco Steel & Eng Co,* 344 Mich 345, 350; 73 NW2d 850 (1955).

Did the court commit reversible error by refusing to instruct the jury that if the plaintiff was a pedestrian and violated MCLA 257.655; MSA 9.2355 he was negligent per se?

We have recently addressed ourselves to this issue in *Bird v Gabris,* 53 Mich App 164; 218 NW2d 871 (1974), wherein we held that one who was attempting to flag down an oncoming vehicle in order to avoid an accident was not a pedestrian within the meaning of the aforesaid statute. We would apply the reasoning in *Bird* to our present facts and hold that plaintiff Harry, while attempt-

ing to start a stalled vehicle on the right-of-way, was not a pedestrian within the meaning of the statute.

Did the trial court commit reversible error by refusing to charge the jury that one who "voluntarily and unnecessarily assumes the danger would be guilty of contributory negligence"?

Such language was discussed in *Felgner v Anderson,* 375 Mich 23, 56; 133 NW2d 136 (1965). There the Court concluded:

"Assumption of risk should not again be used in this state as a substitute for, or as a supplement to, or as a corollary of, contributory negligence; nor should it be used to explain a law violator's enlarged duty of due care resulting from his violation of law. The traditional concepts of contributory negligence are more than ample to present that affirmative defense to established negligent acts."

We find the charge given by the trial court on the subject of contributory negligence to be sufficient without the requested supplemental language.

Did the court commit reversible error by failing to find that the plaintiff was contributorily negligent as a matter of law?

Defendants argue strenuously that plaintiff voluntarily exposed himself to danger and that he was aware of it. To substantiate this claim they quote the following from the record:

"*Q.* But, you knew you couldn't be seen by a car coming from the rear?

"*A.* Oh, yes, I was standing in front of the car.

"*Q.* And you knew Mr. Jonas couldn't be seen?

"*A.* Yes.

\*   \*   \*

"*Q.* So, you preferred to hide your car behind the trailer?

"*A.* I was looking to silhouette the trailer by having the lights on.

"*Q.* Did you go to the rear of the trailer and see what kind of a job you were doing on silhouetting it?

"*A.* No, I did not. I thought I would try to get him out of there as fast as possible.

\*   \*   \*

"*Q.* And you knew the car could be seen?

"*A.* I was hoping the light would silhouette the trailer.

"*Q.* You never checked that out?

"*A.* No, I never checked that out.

\*   \*   \*

"*Q.* You were working in the middle of a highway between two cars and just never happened to think about any cars approaching and you didn't think it was a danger. Correct?

"*A.* I recognized it as a dangerous situation, and that is why I was trying to hurry and get him out of there.

"*Q.* If you thought it was dangerous, why didn't you tell the police to stay?

"*A.* I thought we were done. I thought we had hooked up the cables.

\*   \*   \*

"*Q.* Mr. Harry, just so I understand you correctly, are you saying you didn't think it was a dangerous situation or just didn't think?

"*A.* No. Any car stalled in the middle of the highway, I would say is a dangerous situation.

\*   \*   \*

"*Q.* When you then realized it was a dangerous situation, why didn't you either call a wrecker or have him wave down cars, rather than having him stand around you?

"*A.* I was busy. I was busy trying to get the car to run. I was thinking in terms of getting the motor to go to get that car out of there. I was not thinking about getting anybody out to wave to traffic.

"*Q.* Oh, you weren't thinking about your own safety?

"*A.* I was thinking of getting the car running then. What I could have thought about, I was not aware of.

"*Q.* Were you thinking of your own safety at all?

"*A.* I am not aware of that at this time."

When we place plaintiff in this well-lighted setting, with plenty of room for traffic to pass on either side of the stalled vehicles, with the back of the trailer marked with lights and fluorescent tape and with all drivers seeing the vehicles in time to stop, can we say as a matter of law that plaintiff, in the act of alleviating a potentially dangerous situation at some risk to himself, was acting unreasonably? The fact question for jury consideration was reasonable. They so found and we cannot disagree under the circumstances here. See *Schweim v Johnson,* 10 Mich App 81; 158 NW2d 822 (1968); *Megge v Lumbermens Mut Casualty Co,* 45 Mich App 119; 206 NW2d 245 (1973); *Ford v American National Ins Co,* 46 Mich App 368; 208 NW2d 226 (1973).

Did the court commit reversible error by submitting the question of the liability of the defendant police officers and the defendant municipality to the jury?

Defendants argue that since plaintiffs claim and the jury found that plaintiff Billie Harry was not guilty of contributory negligence and that he was acting reasonably under the circumstances these same circumstances should be sufficient to find that the police officers likewise acted reasonably after appraising the situation. A cursory examination of this claim might lead one to agree. But upon reflection we believe the argument should fail.

A jury might find that the circumstances warranted the risk involved in removing the danger

on the street and at the same time find that it was the duty of the officers under the above statute to reduce the risk by whatever means at hand, and failure to do so would amount to negligence. This is not to say that the police officers had a greater duty than the ordinary person under the circumstances. But it would seem reasonable to require the officers to remain at the scene with their oscillating light to warn that this was not an ordinary situation of a car and trailer waiting for the traffic light to turn green.

We find the evidence in this case justifies the jury verdict and affirm the trial court's denial of a directed verdict, motion n.o.v., and motion for new trial. Costs to plaintiffs.

All concurred.