ARMSTRONG v CITY OF ANN ARBOR

1. MOTIONS—DIRECTED VERDICT—JUDGMENT NOTWITHSTANDING THE VERDICT.

Motions for a directed verdict or judgment notwithstanding the verdict must be viewed in the light most favorable to the plaintiff.

2. TRIAL—NEGLIGENCE—JURY QUESTION—PROXIMATE CAUSE.

A plaintiff's case was properly presented to the jury in an action to recover damages for injuries suffered by a minor pedestrian as a result of defendant city's negligence when the minor collided with the city's garbage truck, where there were disputed questions of fact and, patently, men could disagree as to whether the negligence of defendant's agent crossing guard combined with the lack of instructions by defendant was a proximate cause of the accident.

3. APPEAL AND ERROR—JURY VERDICT.

Appellate courts are reluctant to reverse the decisions of juries when facts are presented to them which would justify the verdict, since a jury has the opportunity to observe the witnesses and determine the credibility of their testimony far

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 886.
   30 Am Jur 2d, Evidence § 1086.
[2] 75 Am Jur 2d, Trial §§ 358, 378.
[3, 4] 4 Am Jur 2d, Appeal and Error § 77.
[5] 7 Am Jur 2d, Automobiles and Highway Traffic §§ 207, 208, 215.
[6] 42 Am Jur 2d, Infants §§ 142, 144.
   Liability of infant for injuries inflicted at play. 173 ALR 901.
   Tort liability of child of tender years. 67 ALR2d 570.
[7] 46 Am Jur 2d, Judges § 96.
[8] 46 Am Jur 2d, Judges §§ 200–203.
   State's right to file affidavit disqualifying judge for bias or prejudice. 115 ALR 866.
   Time for asserting disqualification of judge, and waiver of disqualification. 73 ALR2d 1238.
[9, 10] 46 Am Jur 2d, Judges §§ 166–179.

better than an appellate court which must judge from a cold record.

4. APPEAL AND ERROR—JURY VERDICT—JUDGE'S FINDINGS OF FACT.

A jury's verdict is entitled to an even higher degree of appellate respect than a trial judge's factual findings.

5. NEGLIGENCE—STATUTES—PEDESTRIANS—TRAFFIC LIGHTS—DUTY OF CARE.

Pedestrians must observe traffic lights but may continue on if halfway across the street when a traffic signal changes (MCLA 257.613[2]).

6. INFANTS—NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—DUTY OF CARE—CHILDREN.

The due care of a child for its own safety must be measured by the care the ordinary child of similar age, experience, judgment, and physical and mental development may be reasonably expected to observe under similar circumstances.

7. JUDGES—DISQUALIFICATION OF JUDGES—EMPLOYMENT AS COUNSEL.

A judge shall be deemed disqualified to hear an action where he has been consulted or employed as counsel by a party pertaining to the subject matter to be litigated (GCR 1963, 405.1[5]).

8. JUDGES—DISQUALIFICATION OF JUDGES—WAIVER OF OBJECTION—MOTIONS.

Any objection based upon disqualification of a judge has been waived if a timely motion to disqualify the judge has not been made under the court rules (GCR 1963, 405).

9. JUDGES—CHANGE OF JUDGE—PREJUDICE—NECESSITIES OF JUSTICE.

A change of judge is an unjustifiable wrong to the public unless the fact of prejudice or bias is established or the necessities of justice to the defendant require it, because it causes delay, entails expense, and endangers the prosecution.

10. JUDGES—JUDGE'S NONJUDICIAL ACTIVITIES—PREJUDICE—ACTUAL PROOF— DUE PROCESS—APPEAL AND ERROR.

An appellate court must demand actual proof of claimed prejudice when reviewing the nonjudicial activities of a judge, and when no proof is forthcoming that court must find that no violation of due process occurred.

Appeal from Washtenaw, S. J. Elden, J. Submitted Division 2 October 10, 1974, at Lansing. (Docket No. 18247.) Decided February 10, 1975. Leave to appeal denied, 394 Mich —.

Complaint by Sandra E. Armstrong, by Arthur E. Armstrong, her next friend, and Arthur E. Armstrong, against the City of Ann Arbor for damages for injuries received when the minor pedestrian collided with the side of a garbage truck. Judgment for plaintiff. Defendant appeals. Affirmed.

*Crippen, Dever, Urquhart & Cmejrek,* for plaintiffs.

*R. Bruce Laidlaw,* Chief Assistant City Attorney, for defendant.

Before: QUINN, P. J., and BASHARA and VAN VALKENBURG,* JJ.

VAN VALKENBURG, J. This action was brought by Arthur E. Armstrong, father and next friend of Sandra, for damages covering medical bills plus pain and suffering. The unfortunate accident occurred at about 3:30 p.m. on December 7, 1965, at the corner of Packard and Granger Streets in the City of Ann Arbor when Sandra, 7 years and 2 months of age at the time, collided with the side of a garbage truck owned by the City. At the time of the accident, the child was on her way home from school.

The plaintiffs base their case on the negligence of the City and the crossing guard, contending that the City failed to properly instruct the guard as to his duties and that the guard was careless.

The record is not clear as to just how the accident happened. The City contends that she ran into the vehicle while the plaintiffs argue that the boys and girls were around the guard who was

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

eight feet from his proper location and that the vehicle, being driven through the intersection at about 10 miles per hour, was in close proximity of the children and the curb. There is no dispute about the fact that the crossing was equipped with a traffic light together with "walk" and "don't walk" signs.

The jury returned a verdict of $52,650, but failed to apportion the amounts between the plaintiffs. Later the court made the adjustments by allowing $8,150.85 to the father, as the parties had stipulated as to the total of the medical bills, and the balance of $44,499.15 to Sandra for her damages.

The defendant first asserts that this verdict was contrary to the great weight of the evidence and that the court should have granted its motion for a directed verdict or a judgment notwithstanding the verdict.

The plaintiffs relied largely upon the testimony of Earl Samuels, the guard, called for cross-examination under the statute, MCLA 600.2161; MSA 27A.2161. He stated that he was 75 years old at the time of the incident and over 80 when the trial took place, that he was retired but had been a fireman in Detroit, and that he had received instructions at the City Hall for about an hour, but couldn't remember whether the officer was the Chief of Police or not.

When inquiry was made as to how he obtained the job, he replied: "I had a friend that was in politics at that time and I found that I could do something extra, and he interceded for me to apply for this job at City Hall and I did. On his recommendation, I was hired.".

Later the witness testified as to the lack of specific instructions. We quote directly from the record:

"*Q.* How did you know what corner to go to? There were four corners at that intersection.

"*A.* I found out that the guard the year before had trained the children about coming a certain direction.

"*Q.* How did you find that out?

"*A.* I think the children told me, and they just ordinarily followed suit. Later on, I got one of the neighbors and he told me.

"*Q.* You really got your instructions from a neighbor or a former guard?

"*A.* Yes.

"*Q.* Do you remember the former guard's name?

"*A.* No, I don't.

"*Q.* Was this someone you met before or after you took the job?

"*A.* Yes, after.

"*Q.* You were on duty before you ever talked to this man?

"*A.* Yes.

"*Q.* The first day you went down, you did not talk to this man?

"*A.* No.

"*Q.* How did you decide when you got there, what corner you would patrol?

"*A.* The children told me.

"*Q.* The kids told you which way they wanted to cross?

"*A.* Yes."

The school principal testified that he had observed the children on previous occasions crowding around the guard and chatting with him. Sandra, although 13 at the time of the trial, could remember absolutely nothing about the incident. She recalls going home from school and later waking up in the hospital.

From the foregoing it can be readily determined that there existed disputed questions of fact. It is elementary that motions for a directed verdict or judgment notwithstanding the verdict must be

viewed in the light most favorable to the plaintiffs. Patently, here men could disagree as to whether the negligence of the guard, combined with the lack of instructions by the City, resulted in the proximate cause of the accident. Under such circumstances the case was properly presented to the jury. *Wamser v N J Westra & Sons, Inc,* 9 Mich App 89; 155 NW2d 871 (1967); *Taft v J L Hudson Co,* 37 Mich App 692; 195 NW2d 296 (1972).

Likewise, appellate courts are reluctant to reverse the decisions of juries when facts are presented to them which would justify the verdict. The members thereof have the opportunity to observe the witnesses and determine the credibility of their testimony far better than an appellate court which must judge from a cold record. As we said in *Ford v American National Ins Co,* 46 Mich App 368, 372; 208 NW2d 226 (1973):

"We note that a reviewing court may not reverse the findings of a jury unless reasonable minds could not disagree. *Schweim v Johnson,* 10 Mich App 81; 158 NW2d 822 (1968). A jury's verdict is entitled to an even higher degree of appellate respect than a trial judge's factual findings. *Humphrey v Swan,* 14 Mich App 683; 166 NW2d 17 (1968). Where, as here, the trial judge has reviewed the verdict and approved it, appellate review is even more limited. *Termaat v Bohn Aluminum and Brass Co,* 362 Mich 598; 107 NW2d 783 (1961).

Also see, *Booth v Bond,* 354 Mich 561; 93 NW2d 161 (1958).

We have reviewed the complete record with meticulous care and conclude that ample evidence was presented to justify the verdict.

Secondly, the City contends that the trial judge erred in failing to give the requested instruction concerning the pedestrian "wait-walk" signal and that the instructions, given in response to the

questions from the jury, as to the observations required on the part of the plaintiff before entering the street, were erroneous. The statute MCLA 257.613(b)(2); MSA 9.2313(b)(2) provides in substance that pedestrians must observe the lights but may continue on if halfway across the street when the signal changes.

The actual instructions given on this point read as follows:

"It is also the duty of the plaintiff in connection with this occurrence to use ordinary care for her own safety. When I use the words 'ordinary care' with respect to the minor child, I mean that degree of care which a reasonably careful minor child of the age, mental capacity and experience of the minor in this case would use under the circumstances which you find existed. The existence of an ordinance allowing a child to cross the street on a green walk signal does not absolve Sandra Armstrong of looking while crossing the street. I charge you that is what an ordinary prudent seven-year-old child must do while crossing the street. You are further instructed that you may consider the Michigan statute which provides that whenever special pedestrian control signals are installed, they shall be placed at the far end of each crosswalk and shall indicate a 'walk' or 'don't-walk' interval, and such signals shall apply to pedestrians.

"Now, having considered the question of negligence, we come to the question that has been raised, that of contributory negligence on the part of the plaintiff in this case. When I use the words contributory negligence with respect to the plaintiff's conduct, I mean the plaintiff's failure to use ordinary care for her own safety, which proximately contributed to her injury. By failure to use ordinary care for her own safety, I mean the failure to do something which a reasonably careful person would do or the doing of something which a reasonably careful person would not do under the circumstances which you find existed in this case. It is for you to decide what a reasonably careful person would

do or would not do for her own safety under such circumstances. However, I again remind you that a minor child does not have the same standard of conduct as an adult. When I use the words ordinary care or negligence with respect to the minor child, I mean that degree of care which a reasonably careful minor of the age, mental capacity and experience of the minor would use under the circumstances which you find existed in this case. It is for you to decide what a reasonably careful minor would do or would not do under such circumstances."

During the deliberations, the jury returned and asked two questions: "Does the law specifically require a seven-year-old to stop and look both ways before crossing, and if this was not done, must contributory negligence be inferred, or is the jury to come to its own conclusion as to what is reasonable conduct for a seven-year-old child? Does any degree of contributory negligence outweigh negligence by the defendant?"

The court answered the second question first by saying: "Any degree of contributory negligence whatsoever bars recovery". The first question was answered in pertinent part as follows: "However, a minor child does have a duty to observe the 'walk', 'don't walk' pedestrian signals and does have a duty to make a proper observation before crossing the street. Put those instructions together, and based upon that, make your deliberations, make your findings, based upon the standard of care of a seven-year-old child under the circumstances presented in this case and whether or not contributory negligence exists".

The disputed charge was thoroughly discussed in chambers and counsel were given the opportunity to present any authority that a minor, seven years old, was "negligent per se or negligent as a matter

of law for failure to obey the statute in question * * * ".

Although the jury arrived at an opposite conclusion, this Court approved a similar instruction for a seven and one-half year old child in *Pratt v Berry*, 37 Mich App 234; 194 NW2d 465 (1971). The general rule for such cases has been quoted in *DeNoyer v Ann Arbor*, 9 Mich App 26, 29; 155 NW2d 689 (1967), as follows:

"The due care of a child for its own safety must be measured by the care the ordinary child of similar age, experience, judgment, and physical and mental development may be reasonably expected to observe under similar circumstances."

Reading the instructions as a whole we hold that they were fair to all concerned and properly explained the law as it applied to the facts. See *Pratt, supra,* and cases cited therein.

Further, we must remember that the exact facts as to how the accident happened were in dispute. It being the contention of the plaintiffs that the little girl was hit while crowding around the guard rather than by running into the street.

Interestingly enough, the record shows that counsel for the plaintiffs strenuously objected to the answers given to the questions from the foreman and even argued that the jury should be called back for further instructions. He was fearful that the jury would gain the impression that it would have "little choice in deliberating under these circumstances". We agree that these answers were favorable to the defendant and therefore it has no cause to complain.

The last issue is whether or not the judge should have disqualified himself by virtue of the fact that he had worked on the case while being employed

in the office of the City Attorney and liability had been denied. This information was communicated to both sides and they agreed that he could, in spite of this fact, continue as presiding judge.

Revised GCR 1963, 405 covers the matter of disqualification of judges. Section 405.1(5) reads:

"has been consulted or employed as counsel by a party pertaining to the subject matter to be litigated".

In view of this clear mandate, we hasten to add that it is our considered judgment that Judge Elden under these circumstances should have disqualified himself upon his own motion. However, we must now consider whether or not either of the litigants were prejudiced as a result of this obvious error.

We should note as a background that the judge to whom the case was originally assigned was deceased, his successor was ill, and the parties had been waiting for over 6-1/2 years for a trial date. District Judge Elden had been assigned to assist in clearing this huge backlog of cases. If he disqualified himself, it would have meant further delay while an outside judge was being obtained.

We find in 2 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), p 279 the following statement:

" * * * if a timely motion to disqualify the judge has not been made under these rules, any objection based upon disqualification of the judge has been waived".

There seems to have been little doubt but what the parties understood that all objections had been waived as shown by statements taken from page 10 of the defendant's brief, which we quote:

"The parties to this case were well aware of the fact

that the trial judge who was assigned to the case had first become acquainted with it when he was an assistant city attorney for defendant-appellant. However, no objection was raised to S. J. Elden sitting as acting circuit judge on the matter * * * . However, we must admit that all parties knew of the prior involvement and did not assert the court rule."

Therefore, we can conclude that it is possible for the disqualification to be waived and that is what the attorneys expressly did here.

There is very little authority on this subject, but what decisions we have seem to turn on whether or not the judge was biased or prejudiced in some way.

The Supreme Court in *Kolowich v Ferguson,* 264 Mich 668, 670; 250 NW 875 (1933), a criminal matter, said:

"Unless the fact of prejudice or bias is established or the necessities of justice to the defendant require it, a change of judge is an unjustifiable wrong to the public for it works delay, entails expense, and endangers the prosecution."

A case more in point is *Wayne County Prosecutor v Doerfler,* 14 Mich App 428, 441; 165 NW2d 648 (1968), authored by Judge (now Justice) FITZGERALD in which he said:

"An appellate court must demand actual proof of claimed prejudice when reviewing the non-judicial activities of a judge, and when none is forthcoming that court must find that no violation of due process has occurred."

It must be remembered that this accident took place in December 1965, that the complaint was filed in February 1966, and that Judge Elden had worked on it several years before it came to trial.

Therefore, the real crux of the issue is whether or not the defendant was harmed in any way by virtue of this fact. The City, in its brief, has failed to pinpoint any bias or prejudice which can be attributable to the prior knowledge possessed by the judge.

A review of the record indicates that this three day trial was conducted with proper judicial decorum and finesse. When questions as to the admissibility of evidence arose the jury was required to leave the room so as to avoid any possible prejudice. The proposed instructions were fully discussed in chambers and the lawyers were given complete freedom to protect the interests of their respective clients. No question has been raised as to the expertise of the two attorneys who were experienced and highly skilled in trial procedure.

We repeat that Judge Elden should have disqualified himself on his own motion, regardless of the waiver, even though it would have meant further delay. However, we have spent an unusual amount of time examining every facet of this case. We find in spite of the error that the trial was conducted in a professional manner and without prejudice or bias to either party.

Therefore, we find no justifiable reason for ordering a new trial.

Affirmed. Costs to the plaintiffs.