DOOM v BRUNSWICK CORPORATION

Docket No. 164919. Submitted February 22, 1995, at Lansing. Decided May 26, 1995, at 9:05 A.M. Leave to appeal sought.

Donna Doom sought worker's compensation benefits in the Bureau of Worker's Disability Compensation for a work-related injury sustained on October 19, 1982, while employed by Brunswick Corporation, who was insured by Northwestern National Insurance Company. After the injury, Doom was granted favored work within her physical restrictions until she was laid off for economic reasons in January 1985. Doom was recalled to a position that was within her physical restrictions and that was performed by some employees who had physical restrictions and by others who did not. Doom was laid off from that position from time to time and received unemployment compensation benefits. In the proceeding before a worker's compensation magistrate, the parties stipulated the injury, the date of injury, Doom's continuing disability,· and Doom's continuing employment in the position subject to recurring layoff. The parties also stipulated that the only issues for determination by the magistrate were the application of MCL 418.301; MSA 17.237(301) relative to Doom's postinjury employment for more than one hundred weeks and the effect of her receipt of unemployment compensation benefits on her right to worker's compensation benefits. The magistrate decided that Doom's postinjury job at Brunswick had not established a new wage-earning capacity, thus entitling her to worker's compensation benefits, because those jobs were favored work and that Doom did not have to exhaust unemployment compensation benefits in order to receive worker's compensation benefits. Brunswick and Northwestern National appealed to the Worker's Compensation Appellate Commission, which remanded the case to the magistrate for the issuance of a supplemental opinion regarding whether Doom had established a new wage-earning capacity under MCL 418.301(5)(d); MSA 17.237(301)(5)(d). The magistrate who originally heard the case was no longer on the board

REFERENCES
Am Jur 2d, Workers' Compensation §§ 242-273.
See ALR Index under Workers' Compensation.

of magistrates, and a second magistrate issued a supplemental opinion that relied on *McNairnee v General Motors Corp,* 1992 WCACO 66, in determining that Doom had not established a new wage-earning capacity. The appellate commission affirmed the magistrate's decision. Brunswick and Northwestern National appealed by leave granted.

The Court of Appeals *held:*

1. MCL 418.301(5)(d); MSA 17.237(301)(5)(d) does not preclude an award of worker's compensation benefits for an employee who has been engaged in reasonable employment for one hundred weeks or more but who has not exhausted eligibility for unemployment compensation benefits, given that the employer , is entitled under MCL 418.358; MSA 17.237(358) to coordination of unemployment compensation benefits and worker's compensation benefits.

2. *McNairnee, supra,* which focused on the severity of the injury, the severity of the resultant disability, the nature of the reasonable employment performed, and the reasons for the loss of the reasonable employment, established the correct test for determining whether a new wage-earning capacity has been established for purposes of § 310(5)(d).

Affirmed.

1. WORKER'S COMPENSATION — REASONABLE EMPLOYMENT AFTER SUSTAINING DISABILITY — NEW WAGE-EARNING CAPACITY — UNEMPLOYMENT COMPENSATION.

An employee who is laid off from reasonable employment that lasted one hundred weeks or more after a disabling work-related injury is not required to exhaust eligibility for unemployment compensation benefits before seeking worker's compensation benefits related to the job in which the disability was sustained (MCL 418.301[5][d]; MSA 17.237[301][5][d]).

2. WORKER'S COMPENSATION — REASONABLE EMPLOYMENT AFTER SUSTAINING DISABILITY — NEW WAGE-EARNING CAPACITY.

The severity of an injury, the severity of the resultant disability, the nature of the reasonable employment performed, and the reasons for the loss of the reasonable employment are examined when determining whether reasonable employment after a disability was sustained established a new wage-earning capacity that renders an employee ineligible for worker's compensation benefits related to the job in which the disability was sustained (MCL 418.301[5][d]; MSA 17.237[301][5][d]).

*McCroskey, Feldman, Cochrane & Brock* (by *Darryl R. Cochrane*), for the plaintiff.

*Sinn, Day, Felker, Chinitz, Lovernick & Roggenbaum, P.C.* (by *William A. Day*), for the defendants.

Before: HOLBROOK, JR., P.J., and JANSEN and O'CONNELL, JJ.

PER CURIAM. Defendant Brunswick Corporation appeals by leave granted from a decision entered on April 30, 1993, by the Worker's Compensation Appellate Commission affirming the decision of the magistrate granting benefits to plaintiff Donna Doom. We affirm.

Plaintiff began working for defendant in 1968. During the course of her employment, she sustained injuries to her back, shoulders, and wrists. When plaintiff returned to work in 1983 following carpal-tunnel surgery, she was permanently restricted from lifting more than ten pounds. Plaintiff was assigned to a job packaging nuts and bolts in the storekeeping department. The jobs in this department were reserved for employees with medical restrictions. Plaintiff took time from work in October 1983 to undergo shoulder surgery. She returned to the storekeeping department job in February 1984 and remained there until she was laid off for economic reasons in January 1985.

When plaintiff was recalled to work, she was informed that the lifting requirements in the storekeeping department had been increased to thirty-five pounds. Because the job duties in that department now exceeded her physical restrictions, plaintiff used her seniority to bump an employee from a position on the electrical bench. Plaintiff was given a job assembling electrical boards. The job was not considered favored work and was performed by both restricted and nonrestricted employees. Plaintiff was laid off from time

to time for economic reasons. She had sufficient seniority to bump into other positions during these times; however, defendant did not allow her to do so because of her medical restrictions.

Plaintiff sought worker's compensation benefits. At trial, the parties stipulated an injury date of October 19, 1982, the fact that plaintiff remained disabled, and the fact that plaintiff continued to be employed by defendant on the electrical bench. The parties agreed that the only issues to be determined were the application of the provisions of MCL 418.301; MSA 17.237(301) relative to plaintiff's return to favored work for more than one hundred weeks, and the effect of her receipt of unemployment compensation on her right to receive worker's compensation benefits. Section 301(5) reads in part:

> (5) If disability is established pursuant to subsection (4), entitlement to weekly wage loss benefits shall be determined pursuant to this section and as follows:
>
> (a) If an employee receives a bona fide offer of reasonable employment from the previous employer, another employer, or through the Michigan employment security commission and the employee refuses that employment without good and reasonable cause, the employee shall be considered to have voluntarily removed himself or herself from the work force and is no longer entitled to any wage loss benefits under this act during the period of such refusal.
>
> * * *
>
> (d) If the employee, after having been employed pursuant to this subsection for 100 weeks or more loses his or her job through no fault of the employee, the employee shall receive compensation under this act pursuant to the following:
>
> (i) If after exhaustion of unemployment benefit eligibility of an employee, a worker's compensation

magistrate or hearing referee, as applicable, determines for any employee covered under this subdivision, that the employments since the time of injury have not established a new wage earning capacity, the employee shall receive compensation based upon his or her wage at the original date of injury. There is a presumption of wage earning capacity established for employments totalling 250 weeks or more.

(ii) The employee must still be disabled as determined pursuant to subsection (4). If the employee is still disabled, he or she shall be entitled to wage loss benefits based on the difference between the normal and customary wages paid to those persons performing the same or similar employment, as determined at the time of termination of the employment of the employee, and the wages paid at the time of the injury.

(iii) If the employee becomes reemployed and the employee is still disabled, he or she shall then receive wage loss benefits as provided in subdivision (b).

In a decision mailed on August 22, 1989, the magistrate found that plaintiff had not established a new wage-earning capacity in the jobs she performed since returning to work for defendant. The evidence showed that while the electrical bench job was performed by nonrestricted employees, it constituted favored work for plaintiff because she was assigned to the job because of her disability. She was not allowed to work at any other job for defendant, notwithstanding the fact that she had the seniority to do so. The magistrate rejected defendant's contention that § 301(5)(d)(i) required a claimant to exhaust unemployment benefits before a determination could be made regarding entitlement to further worker's compensation benefits. The magistrate found that the intent of the language in the subsection was to provide for a period of time after which a determination regarding

whether the claimant had established a new wage-earning capacity could be made. This interpretation of § 301(5)(d)(i) allowed the provisions of § 301(5)(a) to be implemented, thereby giving the claimant an opportunity to accept reasonable employment.

On appeal, defendant argued that the magistrate erred in applying common-law favored-work principles to the case, and in holding that plaintiff could receive worker's compensation benefits for periods after which she had worked for more than one hundred weeks but for which she had not exhausted her eligibility for unemployment benefits. The WCAC found that the magistrate erred in applying the judicial doctrine of favored work rather than the statutory doctrine of reasonable employment to find that plaintiff had not established a new wage-earning capacity. The WCAC remanded the case with instructions that the magistrate issue a supplemental opinion addressing the issue whether plaintiff had established a new wage-earning capacity pursuant to § 301(5)(d).

Because the magistrate who issued the original decision had left the board of magistrates, the case was assigned to a new magistrate. In a supplemental opinion mailed on October 13, 1992, the second magistrate observed that the original decision regarding the language in § 301(5)(d)(i) concerning unemployment eligibility was not affected by the WCAC's remand. To determine whether plaintiff had established a new wage-earning capacity, the magistrate relied on the criteria set forth in *McNairnie v General Motors Corp,* 1992 WCACO 66. These factors included: (1) the severity of the injury, (2) the severity of the resultant disability, (3) the nature of the reasonable employment performed, and (4) the reasons for the loss of the reasonable employment. The evidence showed that

plaintiff had worked approximately 156 weeks at reasonable employment between the time she returned to work in July 1983 and the time of trial in April 1989. Applying the *McNairnie* factors, the magistrate found that the injury plaintiff sustained on October 19, 1982, necessitated surgery. As a result, plaintiff was permanently restricted from lifting more than ten pounds or from engaging in repetitive activities with her hands. After plaintiff returned to work, she was assigned jobs within her restrictions. She lost those jobs not through any fault of her own, but rather because of amended requirements and economic conditions. The magistrate concluded that plaintiff had not established a new wage-earning capacity, and that she was entitled to worker's compensation benefits when reasonable employment was not available to her.

Defendant appealed, and the WCAC affirmed the magistrate's decision. The WCAC found that the magistrate's findings were supported by the requisite evidence, and that his reliance on *McNairnie, supra,* was not legally erroneous.

Findings of fact made by a magistrate are conclusive on the WCAC if they are supported by competent, material, and substantial evidence on the whole record. MCL 418.861a(3); MSA 17.237(861a)(3). Judicial review is of the findings of fact made by the WCAC, not those made by the magistrate. The findings of fact made by the WCAC are conclusive if there is any competent evidence in the record to support them. *Holden v Ford Motor Co,* 439 Mich 257, 263; 484 NW2d 227 (1992).

Initially, defendant argues that the WCAC's opinion was deficient because it did not resolve the issue whether plaintiff could receive worker's compensation benefits for periods after which she had

worked for more than one hundred weeks but for which her unemployment eligibility had not been exhausted. This argument is without merit. The magistrate's decision of August 22, 1989, indicates a clear ruling on this issue. In its decision of April 13, 1992, the WCAC noted that the issue had been before the magistrate; however, the WCAC did not rule that the magistrate's decision on the issue was erroneous. By not disturbing this aspect of the magistrate's decision, the WCAC, by implication at least, affirmed the decision. After the supplemental opinion was issued, the WCAC affirmed the magistrate's decision.

Furthermore, defendant argues that § 301(5)(d)(i) precludes an award of worker's compensation benefits for an employee who has been engaged in reasonable employment for one hundred weeks or more but who has not exhausted his period of unemployment eligibility. Any other construction of the statute would leave unexplained the Legislature's deferment of a determination regarding the establishment of a new wage-earning capacity. Defendant maintains that the original magistrate's finding that the period was provided in order to allow an employee to obtain reasonable employment is illogical because § 301(5)(d)(i) is premised on a finding that the employee has been engaged in reasonable employment for more than one hundred weeks. We disagree.

Defendant's reading of § 301(5)(d)(i) is plausible; however, an equally plausible interpretation would allow an employee who loses reasonable employment to collect worker's compensation benefits while also collecting unemployment benefits. During this period the employer would be entitled to coordinate worker's compensation benefits with unemployment benefits. MCL 418.358; MSA 17.237(358). Coordination would prevent the em-

ployee from receiving a windfall. After the employee's eligibility for unemployment benefits was exhausted, a determination whether a new wage-earning capacity had been established could be made. If no such capacity had been established, the employee would then be entitled to collect full worker's compensation benefits. Because § 301(5)(d) (i) is subject to two equally plausible interpretations, and because defendant has not demonstrated that the magistrate's interpretation was erroneous, we concur with the WCAC and defer to the magistrate's interpretation. The interpretation of § 301(5)(d)(i) adopted by the WCAC adheres to the principle that the Worker's Disability Compensation Act, MCL 418.101 *et seq.*; MSA 17.237(101) *et seq.*, is remedial and should be interpreted in a liberal and humanitarian manner in favor of the employee. *Loper v Cascade Twp,* 135 Mich App 106, 111-112; 352 NW2d 357 (1984).

Finally, defendant argues that the *McNairnie* test is legally incorrect and, even if legally correct, was applied erroneously in this case. Defendant maintains that the test is incorrect because it considers, in isolation, irrelevant factors such as the severity of the injury and the resultant disability. Defendant asserts that these factors should be relevant only insofar as they affect the claimant's remaining wage-earning capacity. Defendant acknowledges that, although factors such as the nature of the subsequent work performed and the reasons for the loss of that work are relevant to a determination whether a new wage-earning capacity had been established, those factors were applied erroneously in this case. Defendant asserts that the fact that plaintiff's electrical bench job was easier than her previous job and easier than many jobs in the economy at large should not have precluded a finding that plaintiff established a new

wage-earning capacity. According to defendant, the reasonable-employment doctrine in § 301(5) should apply only after disability has been established pursuant to § 301(4); therefore, by definition, plaintiff would be unable to perform a wide range of jobs. Defendant further asserts that plaintiff nevertheless demonstrated an ability to perform a regular job with ordinary conditions of permanency and that she lost the job for economic reasons. Defendant argues that the *McNairnie* panel recognized that the loss of reasonable employment for that reason could support an inference that the job performed was one with ordinary conditions of permanency. We find defendant's arguments to be without merit.

The *McNairnie* test does not consider irrelevant factors in isolation. Factors 1 and 2, the nature and severity of the injury sustained and the resultant disability, must be considered when determining if a disabled employee has established a new wage-earning capacity. The disability determines what employment activities the employee is capable of performing. Factors 3 and 4, the nature of the reasonable employment performed and the reasons for the loss of that reasonable employment, were not applied erroneously in this case. The storekeeping department job was not a regular job with ordinary conditions of permanency. While the electrical bench job fit that description, the fact that plaintiff was performing a nonrestricted job did not mandate a conclusion that she had established a new wage-earning capacity. No evidence showed that plaintiff was physically capable of performing any other job for defendant. In fact, plaintiff was prohibited from bumping into any other job, even though her seniority would have allowed her to do so. While plaintiff lost the electrical bench job from time to time because of

economic conditions, her inability to do any other job for defendant resulted in her experiencing periods of unemployment because of her work-related disability. The finding by the WCAC that plaintiff had not established a new wage-earning capacity was supported by competent evidence, and thus must be deemed conclusive by this Court. *Holden, supra.*

Affirmed.