ILLES v JONES TRANSFER COMPANY (ON REMAND)

Docket No. 174497. Submitted March 16, 1995, at Detroit. Decided August 22, 1995, at 9:25 A.M. Leave to appeal sought.

John S. Illes was awarded worker's compensation benefits by a worker's compensation magistrate who determined that Illes was totally and permanently disabled. The magistrate concluded that Illes' hand pathology, elbow pathology, and carpal tunnel condition were causally related to his work as a truck mechanic for Jones Transfer Company, that Illes sustained a compensable injury to his shoulders, back, legs, ankles, and knees in a fall at work, that Illes' ongoing lower extremity and back pathologies were causally related to that fall, and that a subsequent fall at home resulted from the lower extremity pathology. The Worker's Compensation Appellate Commission reversed the magistrate's decision, concluding that the evidence before the magistrate established that Illes had a history of physical problems not related to work and that those problems easily and directly accounted for Illes' physical complaints. The Court of Appeals denied leave to appeal. The Supreme Court, in lieu of granting leave, remanded the case to the Court of Appeals for consideration as on leave granted. 444 Mich 977 (1994).

On remand, the Court of Appeals *held:*

The decision of the appellate commission must be reversed because competent evidence does not support the commission's conclusion that Illes failed to provide substantial evidence that his disability was related to work. There was testimony by physicians that Illes' degenerative arthritis and carpal tunnel condition were causally related to, or aggravated by, his job; that the fall at work aggravated upper and lower extremity pathologies, as well as neck and back conditions; and that Illes' diabetes was not a contributing cause of his disability.

Reversed and remanded.

JANSEN, P.J., concurring, stated that the Worker's Compensa-

REFERENCES

Am Jur 2d, Workers' Compensation §§ 687, 317-319, 368, 708, 709, 712.

See ALR Index under Workers' Compensation.

tion Appellate Commission, with increasing regularity and in contravention of MCL 418.861a(3); MSA 17.237(861a)(3), is setting aside the findings of worker's compensation magistrates and substituting its own findings.

CORRIGAN, J., concurring, stated that whether there is a growing trend in the Worker's Compensation Appellate Commission to exceed its reviewing authority is beyond this Court's authority to decide and that the plaintiff failed to preserve for appellate review the claim that one of the commissioners who reviewed his case had a pro-employer bias.

1. WORKER'S COMPENSATION — WORKER'S COMPENSATION APPELLATE COMMISSION — WORKER'S COMPENSATION MAGISTRATES — APPEAL.

The Worker's Compensation Appellate Commission, in reviewing a decision of a worker's compensation magistrate, must perform a qualitative and quantitative review of the record; review by the commission is not de novo, and the commission may not merely substitute · its opinion for that of the magistrate; a magistrate's findings of fact are to be regarded as conclusive if supported by competent, material, and substantial evidence on the whole record (MCL 418.861a[13]; MSA 17.237[861a][13]).

2. WORKER'S COMPENSATION — COURT OF APPEALS — WORKER'S COMPENSATION APPELLATE COMMISSION — APPEAL.

Findings of fact by the Worker's Compensation Appellate Commission, on review by the Court of Appeals, are conclusive if there is any competent evidence to support them; a decision of the commission is subject to reversal if the commission operated within the wrong legal framework or its decision was based on erroneous legal reasoning (MCL 418.861a[14]; MSA 17.237[861a][14]).

3. WORKER'S COMPENSATION — WORK-RELATED DISABILITY — PREEXISTING ILLNESSES — CONDITIONS OF AGING PROCESS.

An employee is entitled to worker's compensation benefits where the nexus between the employment and the injury is sufficient to conclude that the injury was a circumstance of employment; benefits are payable not only for a disability caused solely by working conditions, but also for any preexisting illness, disease, or deterioration accelerated or aggravated by the workplace and for any injury that was caused by work coupled with a preexisting condition; conditions of the aging process are compensable if contributed to, or aggravated or accelerated by, the employment in a significant manner (MCL 418.301[2], 418.401[2][b]; MSA 17.237[301][2], 17.237[401][2][b]).

*Charters, Heck & O'Donnell, P.C.* (by *Margaret A. O'Donnell*), for John S. Illes.

*Coticchio, Zotter, Sullivan, Molter, Skupin & Turner, P.C.* (by *Donald N. Payne, II*), for Jones Transfer Company and Liberty Mutual Insurance Company.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Leonard J. Malinowski,* Assistant Attorney General, for Second Injury Fund.

ON REMAND

Before: JANSEN, P.J., and CORRIGAN and T. G. KAVANAGH,* JJ.

T. G. KAVANAGH, J. Plaintiff was awarded worker's compensation benefits by a magistrate who found that plaintiff was totally and permanently disabled because of various physical disabilities that were causally connected to his employment as a truck mechanic. Plaintiff's employer, Jones Transfer Company (hereinafter defendant) appealed, and the Worker's Compensation Appellate Commission reversed the magistrate's decision, ruling that plaintiff's disabilities were not work-related. Plaintiff's application for leave to appeal to this Court was originally denied, but our Supreme Court, on reconsideration, in lieu of granting leave to appeal, remanded the case to this Court for consideration as on leave granted. See 444 Mich 977 (1994). We now reverse the WCAC's decision and remand for further proceedings.

Plaintiff was employed by defendant for twenty-

* Former Supreme Court justice, sitting on the Court of Appeals by assignment.

five years as a truck mechanic. His job duties, which are not disputed, are described in the magistrate's decision as follows:

> As a diesel mechanic, plaintiff described many tasks and various functions performed by him while working in defendant's garage on tractor trailers; including, but not limited to repairing flat tires, changing tire rims, removing rear axle shafts, straightening bumpers, removing water pumps, springs, transmissions, king pins, taking out drive lines, repairing engines, water pumps, brakes and brake lines, removing and replacing alternators, pulling and repairing heaters, drive lines, heater coils, making electrical repairs and generally performing all mechanical work on defendant's trucks.
>
> In order to perform his mechanical work, plaintiff used various hand tools, impact tools, vibrating tools, wrenches and some of them were air driven. He further described the tools as being light and small, and others weighed 50 pounds and upwards, and having as much as 900 pounds of torque. For some tasks, he used a sledge hammer weighing 1C pounds or more to break away bolts and rims when repairing tires.
>
> Often plaintiff had to lift truck parts weighing as much as 150 pounds. He indicated that hydraulic devices and chain falls were available to assist him with some tasks.
>
> Further, much of plaintiff's work required him to lift, bend, stoop, reach, stretch, climb, to lay on his back or stomach, work in awkward positions, stand off balance, walk and carry various equipment as the job required.

On May 1, 1986, plaintiff injured his right hand at work while installing a heater into a truck. Plaintiff received medical treatment and was off work for three weeks because of that injury. On July 10, 1986, plaintiff was injured again at work

when he fell from a trailer onto a cement floor. Plaintiff complained of pain in his legs, ankles, knees, shoulders, and back. He was examined by a series of doctors and did not return to work because of continuing pain in his back and lower extremities, and also numbness and collapsing of his right leg.

On January 10, 1987, plaintiff fell and broke his left foot while walking in his yard at home. According to plaintiff, he fell because his right leg "gave away" because of numbness. Plaintiff continued to seek treatment for his back and lower extremity conditions and, about the same time, began seeking treatment for problems associated with his right hand and weakness of grips in both hands. The medical diagnoses generally attributed plaintiff's physical complaints to advanced degenerative arthritis affecting his extremities, neck, and lower back, to carpal tunnel syndrome involving his wrists, and to ulnar nerve root entrapment at the elbow.

On February 17, 1987, plaintiff filed a petition for worker's compensation benefits, asserting total and permanent disability due to the loss of the industrial use of his hands, arms, and legs. Defendant challenged plaintiff's entitlement to benefits, in part, on the basis that plaintiff's numerous physical complaints were not work-related. At a hearing before a worker's compensation magistrate in June 1987, defendant introduced evidence that plaintiff was sixty-nine-years old and diabetic, that he had operated a twenty-acre farm since 1954, that he was off work for nine months in 1975 after injuring his foot on a farm combine, that he was receiving medication for an irregular heartbeat, and that he had a history of colon cancer. Defendant maintained that plaintiff's numerous

physical complaints were attributable to activities
and medical conditions unrelated to his work.

After receiving testimony from several doctors
concerning the nature, extent, and cause of plain-
tiff's injuries and physical complaints, the magis-
trate found that plaintiff's hand pathology, elbow
pathology, and carpal tunnel condition were all
causally related to his work as a truck mechanic.
Additionally, the magistrate found that plaintiff
sustained a compensable injury to his shoulders,
back, legs, ankles, and knees arising from his fall
at work on July 10, 1986, that plaintiff's ongoing
lower extremity and back pathologies were caus-
ally related to the fall at work, and that plaintiff's
fall at home on January 10, 1987, resulted from
his ongoing lower extremity pathology. The magis-
trate concluded that plaintiff was totally and per-
manently disabled because of the loss of the indus-
trial use of both lower extremities, but that plain-
tiff had not lost the industrial use of his upper
extremities. The magistrate, however, denied
plaintiff's request for nursing care benefits.

Both parties appealed the magistrate's decision
to the WCAC, raising several issues. The WCAC
reversed the magistrate's decision, finding that the
evidence before the magistrate was insufficient to
show that plaintiff's injuries and disabilities were
work-related. Although acknowledging that plain-
tiff had presented medical testimony "asserting
work-relatedness," the WCAC ruled that "[t]he rec-
ord in this case firmly establishes that plaintiff
had a history of non-work-related physical exer-
tions and problems . . . [which] easily and directly
explains the sources for plaintiff's physical com-
plaints." The WCAC concluded that, "[i]n the con-
text of this strong causal evidence, plaintiff failed
to provide substantial evidence by which to attach
any contributing relationship to his work, whether

cumulatively over time or through the two specific injuries plaintiff had in 1986." In light of its reversal on the basis that the injuries were not related to work, the WCAC found it unnecessary to address the other claims raised by the parties.

Plaintiff now argues, and we agree, that the WCAC erred in reversing the magistrate's findings of work-relatedness.

In reviewing a magistrate's decision, the WCAC must perform both a qualitative and quantitative review of the record. MCL 418.861a(13); MSA 17.237(861a)(13). The WCAC's review is not de novo, however, and the WCAC may not merely substitute its opinion for that of the magistrate. *Kovach v Henry Ford Hosp,* 207 Mich App 107, 111; 523 NW2d 800 (1994). A magistrate's findings of fact are to be regarded as conclusive if supported by "competent, material, and substantial evidence on the whole record." MCL 418.861a(3); MSA 17.237(861a)(3).

On review by this Court, findings of fact by the WCAC are conclusive if there is any competent evidence to support them. MCL 418.861a(14); MSA 17.237(861a)(14); *Holden v Ford Motor Co,* 439 Mich 257, 263; 484 NW2d 227 (1992). However, a decision of the WCAC is subject to reversal if the WCAC operated within the wrong legal framework or its decision was based on erroneous legal reasoning. *O'Connor v Binney Auto Parts,* 203 Mich App 522, 527; 513 NW2d 818 (1994). In *Holden, supra* at 269, our Supreme Court stated:

> If it appears on judicial appellate review that the WCAC carefully examined the record, was duly cognizant of the deference to be given to the decision of the magistrate, did not "misapprehend or grossly misapply" the substantial evidence standard, and gave an adequate reason grounded in

the record for reversing the magistrate, the judicial tendency should be to deny leave to appeal or, if it is granted, to affirm. . . .

In this case, we find that reversal of the WCAC's decision is justified because the WCAC's finding that "plaintiff failed to provide substantial evidence by which to attach any contributing relationship to his work" is not supported by competent evidence and because other reasons given by the WCAC for reversing the decision of the magistrate are not grounded in the record.

An employee bears the burden of proving the relationship between an injury and the workplace by a preponderance of the evidence. *Morris v Soloway,* 170 Mich App 312, 315; 428 NW2d 43 (1988). An employee is entitled to compensation where the nexus between the employment and the injury is sufficient to conclude that the injury was a circumstance of the employment. *Collier v J A Fredman, Inc,* 183 Mich App 156, 161; 454 NW2d 183 (1990). Worker's compensation benefits are payable not only for a disability caused solely by working conditions, but also for any preexisting illness, disease, or deterioration accelerated or aggravated by the workplace and for any injury that was caused by work coupled with a preexisting condition. *Kostamo v Marquette Iron Mining Co,* 405 Mich 105, 116; 274 NW2d 411 (1979). Conditions of the aging process are compensable if contributed to, or aggravated or accelerated by, the employment in a significant manner. MCL 418.301(2); MSA 17.237(301)(2) and MCL 418.401(2)(b); MSA 17.237(401)(2)(b).

In the instant case, the WCAC stated that reversal was warranted because, with regard to plaintiff's injuries, plaintiff "failed to provide substantial evidence by which to attach any contributing

relationship to his work." The WCAC also stated
that the medical testimony "pointed strongly" to-
ward plaintiff's diabetes as the "fundamental ba-
sis" for his extremity complaints and carpal tun-
nel problem. Indeed, the WCAC stated that Dr.
Donald Austin, a defense witness, had "explicitly
connected plaintiff's carpal tunnel nerve problems
to his diabetes." A review of the record discloses
that these reasons are not grounded in the record.

Dr. Jerry Taylor, who is an osteopathic physi-
cian and surgeon, agreed that plaintiff had long-
standing degenerative osteoarthritis of both upper
extremities and also carpal tunnel syndrome in-
volving both wrists. He opined, however, that
plaintiff's job duties as a mechanic led to the
development of the carpal tunnel syndrome and
also accentuated the development of plaintiff's
arthritis in his hands, wrists, and arms. Dr. Taylor
also explained the basis of his opinions. Regarding
plaintiff's carpal tunnel syndrome, Dr. Taylor
stated:

> It's my impression that the carpal tunnel syn-
> drome that he has bilaterally was related to the
> repetitive and heavy use of his hands. So, in this
> order of sequence, number one, the use of his
> hands caused carpal tunnel syndrome. The carpal
> tunnel syndrome having been present for a long
> period of time caused the thenar atrophy in both
> places.
>
> *  *  *
>
> Most people feel that work-related carpal tunnel
> syndrome results from a microtenosynovitis, a
> swelling of the tendons, the nine tendons that are
> in the carpal tunnel, that they swell and they
> eventually compress the nerve. And the use of
> vibrating tools, for instance, would, over a period
> of time, [cause] this tenosynovitis to develop. The
> same is true when one is flex[ing] and extending

the wrists and doing a lot of grasping, twisting, pushing and pulling. It eventually cause[s] the tenosynovitis and eventually the carpal tunnel syndrome.

Regarding plaintiff's degenerative arthritis, Dr. Taylor stated:

Degenerative arthritis and osteoarthritis are basically the same conditions. They are not conditions that are due to any disease within the person's body as rheumatoid arthritis which is something a person develops which is in the bloodstream, for instance.

Osteoarthritis, in layman's terms, is a wearing out of the joint surfaces. . . . It's my feeling that the joint surfaces have worn out and deteriorated, partially because of the fact he's done extremely heavy work for a long period of time, thus, the wearing out of the joint surfaces is another way of saying that the arthritis he has developed is because the joints have degenerated from wear and tear, a portion of which is certainly related to his job.

Dr. Taylor further opined that plaintiff's conditions were related to plaintiff's employment in a significant manner.

*Dr. Taylor:* Yes, I feel the conditions I diagnosed are related to his employment and the injury of July.

*Q:* Do you have an opinion, as to whether the relationship of the job duties and his employment is related in a significant manner?

*Dr. Taylor:* Yes, it is significant.

Dr. Frank Cullis testified that trauma contributes to arthritis, and he likewise opined that plaintiff's work activities and fall at work were "significant factors" in the development of plaintiff's up-

per and lower extremity pathologies, as well as his neck and back conditions.

Dr. Austin agreed that repeated use of power tools and hand tools would be a "definite factor" in the cause of carpal tunnel syndrome and ulnar nerve root entrapment. In response to a hypothetical question describing plaintiff's job duties and medical history,[1] Dr. Austin agreed that "the most likely factor involved in his carpal tunnel syndrome would be his job." During later questioning, Dr. Austin again opined that plaintiff's work as a mechanic "was the significant contributing factor to the development" of plaintiff's ulnar nerve entrapment and carpal tunnel conditions. Dr. Austin also agreed that plaintiff's July 10, 1986, fall at work could have aggravated plaintiff's neck and back conditions.

Defense witness Dr. Fred Lamb also agreed that repetitive activity can contribute to degenerative arthritis and another defense witness, Dr. Herman Remsperger, agreed that repetitive use of power tools can lead to carpal tunnel syndrome.

The foregoing medical testimony constituted substantial evidence under MCL 418.861a(3); MSA 17.237(861a)(3) on which the magistrate could find that plaintiff's disabilities were work-related.

Regarding the role of plaintiff's diabetes, Dr. Austin testified that diabetics are more "prone" to nerve entrapment syndromes and, therefore, opined that "some" of plaintiff's carpal tunnel and ulnar nerve problems could be "at least partly due to that diabetes." He added, however, that the repetitive use of power tools and wrenches would also be a "definite factor" in those conditions. More significantly, in the context of the hypotheti-

[1] Each of the assumptions employed in the hypothetical were supported by evidence in the record.

cal question describing plaintiff's job duties, Dr. Austin stated:

> I think the diabetes makes him more *prone* to the involvement of it, but the *primary cause* would be the repetitive activity itself. [Emphasis added.]

The remainder of the record is devoid of support for the WCAC's characterization of the medical evidence as "point[ing] strongly" toward plaintiff's diabetes as the "fundamental basis" for his extremity complaints and carpal tunnel problems. To the contrary, Dr. Taylor specifically negated plaintiff's diabetes as a contributing cause of his conditions, explaining:

> [Plaintiff] was diagnosed as having diabetes in the late 1960's, which would be a rather late onset of diabetes. From a medical point of view, diabetes that begins in later life is not usually as significant as diabetes that develops in a child or young adult. Furthermore, we tend to classify diabetes, the severity of diabetes on the basis of whether or not it ever required insulin to control it. Obviously, the more severe cases of diabetes require the use of insulin . . . where the less severe cases don't require it.
>
> In this case, this man has never required insulin and based on the fact his diabetes was rather late onset and based upon the fact that it never required the use of insulin, it is my feeling that it was not a significant case of diabetes and the significance in this case is this: That carpal tunnel syndrome and other neuropathies can be related to long-standing cases of diabetes, the type of diabetes being the ones that required insulin. The milder cases of diabetes, as I believe was true in this case, are not involved in neuropathies. So, I don't feel his carpal tunnel syndrome and/or his ulnar neuropathies in either upper extremity are in any way related to the fact he has had mild diabetes for several years.

Dr. Lamb also stated that plaintiff's degenerative arthritis was not related to his diabetes. Dr. Cullis stated, without elaboration, that plaintiff's diabetes "may play some part" in his carpal tunnel condition, but that it was not a factor with regard to plaintiff's lower extremity conditions. On this record, the WCAC erred in finding that the evidence "pointed strongly" toward plaintiff's diabetes as the "fundamental basis" for his extremity complaints and carpal tunnel problems.

While it is true, as the WCAC recognized, that plaintiff has "a history of non-work-related physical exertions and problems," there was substantial evidence supporting the magistrate's finding that plaintiff's present complaints were related to his employment as a truck mechanic. The WCAC simply substituted its opinion for that of the magistrate in concluding otherwise. As this Court observed in *Kovach,* "this is not proper review pursuant to statute and *Holden, supra.*"

Accordingly, for the reasons stated, we reverse the decision of the WCAC and reinstate the decision of the magistrate with regard to the issue of work-relatedness and remand this case to the WCAC for consideration of the remaining issues that were raised by the parties but not considered by the WCAC.[2]

Reversed and remanded. We do not retain jurisdiction.

JANSEN, P.J. *(concurring).* I concur with Justice KAVANAGH's decision to reverse the decision of the

[2] In light of our disposition, it is unnecessary to address plaintiff's claim that reversal is required on the alternative ground of "pro-defendant" bias on the part of one of the WCAC panel members. Furthermore, we note that plaintiff did not raise this issue below and, therefore, it was not preserved. *Benavides v Edward C Levy Co,* 117 Mich App 722, 726; 324 NW2d 149 (1982). Cf. *Armstrong v Ann Arbor,* 58 Mich App 359, 368-369; 227 NW2d 343 (1975).

Worker's Compensation Appellate Commission and remand for the reasons set forth in the opinion. I write separately to emphasize a growing trend of the WCAC to exceed its administrative reviewing authority and deny benefits to eligible employees. That is, the WCAC, with increasing regularity, is setting aside the findings of the magistrates and substituting its own findings. This constitutes improper review de novo.

This case, as do many other worker's compensation cases before this Court, requires the correct application of the standard of review set forth in MCL 418.861a(3); MSA 17.237(861a)(3). I write separately to emphasize that the standard of review set forth in this statutory provision is not a de novo standard of review and the WCAC may not simply substitute its opinion for that of the magistrate.

Beginning October 1, 1986, under 1985 PA 103, review de novo by the WCAC was eliminated. Thereafter, findings of fact by a worker's compensation magistrate were to be considered conclusive, on administrative appellate review by the WCAC, if supported by competent, material, and substantial evidence on the whole record. MCL 418.861a(3); MSA 17.237(861a)(3); *Holden v Ford Motor Co,* 439 Mich 257, 261; 484 NW2d 227 (1992). A review of the evidence by the WCAC must include both a qualitative and quantitative analysis of that evidence and ensure a full, thorough, and fair review of the evidence. MCL 418.861a(13); MSA 17.237(861a)(13). Our Supreme Court has made clear that the WCAC's findings must be consistent with the concept of administrative appellate review that is less than review de novo of the magistrate's decision, but is a more searching review by the WCAC than the "any evidence" standard. *Holden, supra,* pp 261-262; *Farrington v*

*Total Petroleum, Inc,* 442 Mich 201, 218; 501 NW2d 76 (1993).

The present case is an excellent example of the growing trend of the WCAC to exceed its statutory authority and engage in what is essentially review de novo of the record to deny benefits to eligible workers. The record in this case provided overwhelming evidence to support the magistrate's decision. Indeed, a claimant in a worker's compensation case need only establish by a preponderance of the evidence both a personal injury and a relationship between the injury and the workplace. *Jishi v General Motors Corp (On Remand),* 207 Mich App 429, 432; 526 NW2d 24 (1994).

This growing trend of the WCAC is particularly troubling in light of the purposes of the worker's compensation act. The worker's compensation act is remedial legislation and, as such, is to be liberally construed in favor of injured employees. *Gardner v Van Buren Public Schools,* 445 Mich 23, 49; 517 NW2d 1 (1994); *Smeester v Pub-N-Grub, Inc (On Remand),* 208 Mich App 308, 312; 527 NW2d 5 (1995). The primary purpose underlying the worker's compensation act is to provide compensation to eligible persons for covered disabilities. Therefore, any statutory ambiguity generally should be construed in favor of awarding compensation. *Gardner, supra,* p 49. As aptly stated by our Supreme Court:

> The statutory workers' compensation scheme was enacted for the protection of both employees and employers who work and do business in this state. The system assures covered employees that they will be compensated in the event of employment-related injuries. In addition, employers are assured of the parameters of their liability for such injuries. By agreeing to assume responsibility for all employment-related injuries, employers pro-

tect themselves from the possibility of potentially excessive damage awards. In order to effectuate these policies, the statute has been liberally construed to provide broad coverage for injured workers. [*Wells v Firestone Tire & Rubber Co,* 421 Mich 641, 651; 364 NW2d 670 (1984).]

Thus, the worker's compensation act is not intended to benefit employees only. The statutory scheme represents a compromise to both employees and employers. Therefore, while one policy underlying the worker's compensation act is prompt payment to injured employees, the liability of employers is limited because they are shielded from common-law tort actions. *Badon v General Motors Corp,* 188 Mich App 430, 441; 470 NW2d 436 (1991). Employees, therefore, may collect only worker's compensation benefits for personal injury or occupational disease against the employer, and the only exception is a claim for an intentional tort. MCL 418.131(1); MSA 17.237(131)(1).

I reiterate these purposes underlying the worker's compensation act because the WCAC is required to act within the scheme of the worker's compensation act. As Justice Kavanagh correctly notes, the WCAC may not review a magistrate's decision de novo and may not substitute its judgment for that of the magistrate. *Kovach v Henry Ford Hosp,* 207 Mich App 107, 111; 523 NW2d 800 (1994).

Finally, I do not agree with Justice Kavanagh's statement, in footnote two, that the issue of a pro-employer bias on the part of one of the WCAC panel members was not preserved for appellate review because plaintiff did not raise the issue below. Requiring a party to raise this issue of bias in front of the same panel member is onerous, given that it is extremely doubtful that the panel member would concede such an assertion. As this

Court has noted, a failure to object to the conduct of a trial judge is understandable given that counsel may be reluctant to challenge a judge's own behavior on the bench. *People v Sterling,* 154 Mich App 223, 231; 397 NW2d 182 (1986).

Further, this claim is a serious one, resulting in all seven justices of our Supreme Court to remand this case, on reconsideration, to this Court for consideration as on leave granted. See 444 Mich 977 (1994). Contrary to Judge Corrigan's suggestion, I would not foreclose the opportunity of the commissioner to respond. I would not, however, dispose of the claim because of a so-called preservation requirement. Because there does appear to be a trend in the WCAC to exceed its reviewing authority and deny benefits, I would not so plainly dismiss this claim.

Corrigan, J. *(concurring).* Although I concur with Justice Kavanagh's opinion, I write separately to address Judge Jansen's concurring opinion. I cannot agree with my colleague's suggestion that the present case represents a "growing trend of the WCAC to exceed its administrative reviewing authority," *ante* at 57, nor do I agree that we should entertain an issue of alleged bias that was not even presented until plaintiff moved for reconsideration after the Supreme Court initially denied his application for leave to appeal. I would not excuse plaintiff from the duty to make a record because it is "extremely doubtful that the panel member would concede such an assertion." *Ante* at 59.

## I. TREND TO EXCEED ADMINISTRATIVE REVIEWING AUTHORITY

I cannot agree that this case presents an appro-

priate vehicle to chastise the Worker's Compensation Appellate Commission, much less to recognize a trend toward excess in that agency. Because this Court does not enjoy general supervisory authority over the WCAC or any other agency, I would leave the analysis of trends to the commentators and decide only the merits of this particular controversy.

But if this case somehow represents a "growing trend" of the WCAC to "exceed its administrative reviewing authority," that realization certainly escaped a significant number of appellate judges before it reached this panel. A three-judge panel of this Court (NEFF, P.J., and MURPHY and WEAVER, JJ.) originally denied plaintiff's application for leave to appeal from the unanimous WCAC opinion, citing *Holden v Ford Motor Co,* 439 Mich 257; 484 NW2d 227 (1992). All seven justices of our Supreme Court thereafter denied plaintiff's application for leave to appeal. *Illes v Jones Transfer Co,* 444 Mich 897 (1993). Only on plaintiff's motion for reconsideration, when plaintiff first presented his claim that one of the commissioners was biased, did the Supreme Court remand this case for consideration as on leave granted.[1] *Illes v Jones Transfer Co,* 444 Mich 977 (1994). That the WCAC exceeded its reviewing authority did not strike ten judges who are generally attuned to issues of agency excess.

In any event, I see no "trend to excess" in this case. In my view, the problem of causation in reinjury cases ranks among the most difficult questions in worker's compensation litigation. The problem is further magnified when an aged worker

---

[1] The Supreme Court again entered a form order that gives our Court not a glimmer of guidance, a practice that I have previously criticized. *Feldbauer v Cooney Engineering Co (On Remand),* 205 Mich App 284; 517 NW2d 298 (1994).

like Mr. Illes suffers from a preexisting, ordinary disease of life such as diabetes, arthritis, and degenerative joint disease. Competent adjudicators can legitimately differ, and can even commit error, about such questions of causation without exceeding their lawful authority. Cf. *Altman v Nelson,* 197 Mich App 467; 495 NW2d 826 (1992).

By July 10, 1986, sixty-nine-year-old John Illes had a long history of disease and injury. That history included chronic (but mild) diabetes, colon cancer, an irregular heartbeat, diffuse degenerative joint disease, arthritis, two hernias, and a fractured leg. He also apparently suffered from as yet undiagnosed carpal tunnel syndrome, ulnar nerve entrapment, and spinal stenosis. On July 10, 1986, plaintiff was injured when he fell thirteen feet from the top of a truck trailer.[2] He experienced persistent pain in his back, legs, neck, arms, hands, and shoulders and was treated with pain medication, whirlpool therapy, and advised to use a cane. He was also treated by a chiropractor.

Plaintiff never returned to work after July 10, 1986, despite his thirty-two years' seniority as a diesel mechanic at defendant Jones Transfer. In August and October 1986, however, two doctors pronounced him recovered and fit to return to work. One doctor recommended work restrictions, the other did not. One of those doctors related plaintiff's multiple health problems to aging and *not* to his employment. Both doctors who examined plaintiff found degenerative joint disease or arthritis, while one found calcification in the arteries in plaintiff's right leg.

Compensation was voluntarily paid from July 10, 1986, through January 15, 1987. It was termi-

---

[2] Plaintiff's hand previously was injured at work on May 1, 1986. He was off work for a few weeks and received worker's compensation benefits during that time.

nated on the basis of Dr. Lamb's November 24, 1986, examination of plaintiff. The doctor found plaintiff able to return to work. Dr. Lamb noted that plaintiff had much to complain about medically, but did not relate the symptoms to work.

Unfortunately, on January 10, 1987, plaintiff fell in his yard at home and broke his left leg. He later claimed that his right leg gave out, although he never reported this cause at the time. Plaintiff broke his left leg in exactly the same place as a 1975 break during an accident on the family farm. The January 10, 1987, fracture of the left leg did not heal, although the leg was placed in a cast four times. Thereafter, plaintiff was finally diagnosed with carpal tunnel syndrome and ulnar nerve entrapment.

Plaintiff subsequently claimed total and permanent disability and loss of the industrial use of his hands, arms, and legs. The magistrate found a causal relationship between the July 10 accident and the January 10, 1987, injury. The magistrate found that plaintiff had not lost the use of his upper extremities, but had lost the industrial use of his lower extremities. On appeal, the WCAC rejected the magistrate's conclusion of work-relatedness. The decision fairly can be read as an attempt to apply the "significant manner" standard to plaintiff's claims. MCL 418.301, 418.401; MSA 17.237(301), 17.237(401). A finding of fact is conclusive on the WCAC if it is supported by competent, material, and substantial evidence, as stated in *Doom v Brunswick Corp,* 211 Mich App 189, 195; 535 NW2d 244 (1995):

Findings of fact made by a magistrate are conclusive on the WCAC if they are supported by competent, material, and substantial evidence on the whole record. MCL 418.861a(3); MSA

17.237(861a)(3). Judicial review is of the findings of
fact made by the WCAC, not those made by the
magistrate. The findings of fact made by the WCAC
are conclusive if there is any competent evidence
in the record to support them. *Holden v Ford
Motor Co,* 439 Mich 257, 263; 484 NW2d 227
(1992).

The medical testimony obviously was in conflict.
Seven doctors either saw plaintiff or reviewed his
case. One doctor aptly testified that he found it
very difficult to sort out just what factors had
caused or aggravated plaintiff's conditions. I share
his belief. In this tough case, I have approved the
reasoning in Justice KAVANAGH's opinion. But I do
not agree that our decision to reverse warrants
criticism of the WCAC's decisional process in this or
any other case.

## II. BIAS OF WCAC MEMBER

Because the issue of alleged pro-employer bias of
one commissioner has not been preserved for ap-
pellate review, it is not properly before us. Preser-
vation requirements serve overriding juridical in-
terests, including notice, an opportunity to be
heard, economy, and efficiency. If error is cor-
rected when it is first claimed, an appellate rem-
edy is unnecessary. My colleague would excuse
plaintiff from the duty to preserve his claim of
bias because it is extremely doubtful that the
commissioner involved would concede that he is
biased.

A golden thread in our tradition of justice is an
accused person's right to notice and an opportu-
nity to be heard. A judicial officer who is accused
of bias should also be entitled not only to the
courtesy of notice, but also to a fair chance to
respond to the charges. Our canons of ethics seem

to bar judicial officers from responding to attacks in the public arena. Thus, the official record provides the only means by which a judicial officer can answer a claim of disqualifying bias. My concurring colleague would seem to foreclose even this limited opportunity to respond.

Moreover, we should not consider an untested statistical compilation of instances of alleged bias. The statistics plaintiff offers us for the first time on appeal have not been subjected to any form of adversary testing. Nor has plaintiff even attempted to show that the underlying cases were wrongly decided.

Finally, even if plaintiff successfully proved that the commissioner has some statistically measurable bias against claimants, he has not established a deprivation of due process. Even generalized hostility to a certain class of claimants does not present disqualifying bias. *Aetna Life Ins Co v Lavoie,* 475 US 813, 820-821; 106 S Ct 1580; 89 L Ed 2d 823 (1986). In *Williams v Hofley Mfg Co,* 430 Mich 603; 424 NW2d 278 (1988), our Supreme Court saw no constitutional impediment to a system in which members of the Worker's Compensation Appeal Board were appointed as representatives of employer or employee interest groups, or of the public, even though two panel members might be made up of an employer or employee representative and a presumably neutral general public representative. As our less gender-neutral Supreme Court then observed:

> Much harm is done by the myth that, merely by putting on a black robe and taking the oath of office as a judge, a man ceases to be human and strips himself of all predilections, becomes a passionless thinking machine. [*Williams, supra* at 616.]

As *Williams* noted, to condemn an adjudicator as a representative of a particular interest group "is to foreclose experience as a criterion for appointment." *Id.* at 615.

The accused commissioner should have a right to present a defense, and not merely to concede the charge. For these reasons, I fully concur with the observation in the lead opinion that the claim of bias has not been preserved for appellate review.